MAMIE B. QUINN v. P & Q SUPERMARKET, INC.

No. 69ISC476

(Filed 17 December 1969)

1. **Negligence §§ 5.1, 52— definition of invitee**

The distinction between a licensee and an invitee is determined by the nature of the business bringing a person to the premises, an invitee being a person who goes upon the premises for the mutual benefit of himself and the person in possession and whose visit is of interest or advantage to the invitor.

2. **Negligence §§ 5.1, 59— definition of licensee**

A licensee is one who goes upon the premises for his own interest, convenience or gratification, with the consent of the person in possession, and is neither a customer nor a servant nor a trespasser.

3. **Negligence §§ 5.1, 52— injury in supermarket after business hours — status of customer**

Plaintiff, who was the wife of the president of defendant supermarket, had the status of an invitee at the time of her injury in the supermarket after regular business hours, where she entered the store with the permission of her husband in order to purchase some groceries.

4. **Negligence § 57— injury to invitee — supermarket premises — issue of negligence**

Plaintiff, who was an invitee at the time of her injury in defendant's supermarket, was entitled to have the issue of negligence submitted to

QUINN *v.* SUPERMARKET, INC.

the jury if her evidence, and the legitimate inferences from it, tended to show the defendant breached a legal duty which it owed her, and that the breach of, or failure to perform, that duty proximately caused her injury.

**5. Negligence §§ 5.1, 57— injury to invitee — supermarket premises — oil on floor — sufficiency of evidence**

In invitee's action for injuries sustained in a supermarket when she slipped and fell on an oily substance which had dripped onto the floor from a defective flourescent light ballast, the evidence of negligence by the supermarket's proprietor was sufficient to be submitted to the jury where the evidence would support a finding that (1) the proprietor, at closing time, smelled an odor similar to that emitted by a defective ballast, but he made no search of the premises, (2) the proprietor knew from previous experience that defective ballasts might leak oil onto the floor, and (3) the proprietor did not warn the invitee, who entered the store later in the evening, that there was a possibility of oil on the floor.

**6. Corporations § 27— liability for tort of employees**

A corporation is liable for the torts and wrongful acts or omissions of its agents or employees acting within the scope of their authority or the course of their employment.

**7. Negligence §§ 5.1, 53— liability of store proprietor to invitee — knowledge of danger**

The proprietor of a store will be charged with knowledge of a dangerous condition created by his own negligence or the negligence of his employee acting within the scope of his employment, or of a dangerous condition of which his employee has notice.

**8. Negligence §§ 5.1, 57— duty of store proprietor to invitee — safe condition of premises**

It was the duty of supermarket proprietor to exercise ordinary care to keep the premises plaintiff invitee was expected to use in a reasonably safe condition so as not to expose her unnecessarily to danger, and to give warning of hidden conditions and dangers of which he had knowledge, or in the exercise of reasonable supervision and inspection should have had knowledge, and of which plaintiff had less or no knowledge.

**9. Negligence §§ 5.1, 53— what constitutes reasonably safe premises — uses by invitees**

What constitutes a reasonably safe condition of premises depends upon the uses which the proprietor invites his business guests to make of them and those which he should reasonably anticipate they will make, and also upon the known or reasonably foreseeable characteristics of the invitees.

**10. Negligence §§ 5.1, 53— liability of store proprietor — notice of unsafe premises**

A proprietor is charged with notice of an unsafe condition, arising from dangerous substances on the floor of the aisles of its store, if the unsafe condition has remained for sufficient time for the proprietor to know, or by the exercise of reasonable care to have known, of its existence.

APPEAL by plaintiff from Parker, (Joseph W.), J., 28 April 1969 Session, CHOWAN County Superior Court.

The plaintiff is the wife of Henry G. Quinn, President of the defendant P & Q Supermarket, Inc.

On Tuesday, 21 August 1962, between 9:30 and 10:00 in the evening, plaintiff's husband called the plaintiff and told her to come and get her groceries and also asked that she bring their daughter, Glenna A. Farmer, to the P & Q Supermarket to help him paint some display advertising signs. Plaintiff liked to do her own shopping and she had mentioned to her husband at dinner that night that she needed some groceries. She had bought groceries at night before and it was not unusual for the general public to do so if there was someone in the store after regular business hours. Regular business hours were from 7:00 a.m. until 6:00 p.m.

When they arrived, lights were on in the store and Mr. Floars, an electrician, was there doing some refrigeration work. They went to Mr. Quinn's office. When Mr. Floars left, Glenna accompanied him to the door to see that it was properly locked. When Glenna did not return promptly, Mr. Quinn told the plaintiff to go and close the door and see that Glenna was not on the street.

Upon returning with Glenna, plaintiff, while carrying a small dog in her arms, slipped on an oily substance which had dripped from an overhead light fixture. As she lay on the floor where she fell, the oily substance dripped from the light fixture into her hair, eyes and onto her clothes. The light under which she fell was not lighted. It had overheated and the substance had run out. The substance was dark-colored and the floors were also dark. The light was subsequently repaired by Mr. Floars.

The substance was not on the floor when it was swept that evening at 6:00 p.m. However, when Glenna and Mr. Quinn left the store at closing time, about 6:00 p.m. that evening, they smelled an odor similar to that emitted by a faulty light fixture "ballast." They did not locate the faulty "ballast," but they did not search for it. The light fixture had "Todd" ballasts in them which had caused trouble before. When they burned out they emitted an odor and would leak oil.

As a result of her fall, plaintiff sustained injury to her right hip and leg and brings this action for damages alleging the negligence of the P & Q Supermarket, Inc. in allowing the floor to become and remain slippery. At the close of plaintiff's evidence, judgment of involuntary nonsuit was entered. Plaintiff appealed.

*Thomas Chears, Jr., for plaintiff appellant.*

*Leroy, Wells, Shaw & Hornthal, by Dewey W. Wells, for defendant appellee.*

BROCK, J.

At the outset, it is necessary to determine whether plaintiff's status at the time of the injury was that of a licensee or an invitee.

**[1, 2]** "The distinction between a licensee and an invitee does not depend upon whether there is an 'invitation' to come on the premises, but is determined by the nature of the business bringing him to the premises, an invitee being a person who goes upon the premises for the mutual benefit of himself and the person in possession, whose visit is of interest or advantage to the invitor, while a licensee is one who goes upon the premises for his own interest, convenience or gratification, with the consent of the person in possession, and is *neither a customer* nor a servant nor a trespasser." 6 Strong, N.C. Index 2d, Negligence, § 59; *Pafford v. Construction Co.,* 217 N.C. 730, 9 S.E. 2d 408.

**[3]** Plaintiff's evidence, which on a judgment of compulsory nonsuit must be considered in the light most favorable to her, shows that on 21 August 1962 at about 9:30 or 10:00 in the evening she drove her car to the P & Q Supermarket. She did so for two purposes. First, to take her daughter to help Mr. Quinn paint some signs; and second, so she might buy some groceries. The first purpose was fulfilled when she arrived at the supermarket with Glenna. However, to accomplish the second purpose, it was necessary for her to go into the supermarket. Plaintiff's testimony showed that she liked to do her own grocery shopping and that she had mentioned to her husband that night at dinner that she needed to buy some groceries. She testified further that "Mr. Quinn called and told me to come and get my groceries" and that when they arrived, Mr. Quinn let them both into the store.

From this it is reasonable to infer that Mr. Quinn allowed plaintiff to enter so she might buy some groceries. This would be of mutual benefit to both plaintiff and defendant and advantageous to defendant, thereby giving plaintiff the status of an invitee. *Pafford v. Construction Co., supra.*

While most cases in our reports have involved injuries sustained during regular business hours, we see no reason why it should be required that the injury occur during regular business hours for the customer to have invitee status. So long as the person goes upon

the premises for the mutual benefit of himself and the person in possession, and the visit is of interest or advantage to the invitor, the person will be considered, at least initially, an invitee.

[4]    Nevertheless, to withstand a motion for judgment of nonsuit, the evidence, interpreted in the light most favorable to the plaintiff, must be sufficient to support a finding of negligence by the defendant which was a proximate cause of the plaintiff's injury. The plaintiff was entitled to have the issue of negligence submitted to the jury if her evidence, and the legitimate inferences from it, tended to show the defendant breached a legal duty which it owed her, and that the breach of, or failure to perform, that duty proximately caused her injury. We are of the opinion the evidence presented by plaintiff is sufficient to withstand defendant's motion for involuntary nonsuit.

[5]    Plaintiff's evidence showed that when her daughter and Mr. Quinn left the store at closing time, about 6:00 p.m., they smelled an odor similar to that emitted by a faulty light fixture ballast and that while they did not locate the faulty ballast, they did not search for it. It was also in evidence that the "Todd" ballasts, present in some of the light fixtures, had caused trouble before, in that when a light burned out the ballasts emitted an odor and would leak oil. Mr. Floars, an electrician, testified that when the light fixtures overheated the fluid would run out of them mostly onto the floor; that he had repaired the fixture that was leaking when the plaintiff slipped by replacing the "Todd" ballast with a new type, the liquid in which hardened whenever it touched the outside of the fixture; and that he had replaced ten or more of the "Todd" ballasts in defendant's store before.

Therefore, it would be reasonable to infer, and the jury would be justified in so finding, that even though Mr. Quinn smelled the odor, he left the store at 6:00 p.m. that evening knowing there was a light fixture that had become overheated and burned out, thus causing it to leak oil, and possibly that this oil was leaking onto the floor. And that, nevertheless, when the plaintiff came to the store later that night, Mr. Quinn opened the door for her and allowed her to come in to get some groceries without giving her any warning.

[6]    "It is elementary knowledge that a corporation in its relations to the public is represented and can act only by and through its duly authorized officers and agents. (Citation omitted.) The general rule is well established that a corporation is liable for the torts and wrongful acts or omissions of its agents or employees acting within the scope of their authority or the course of their employ-

ment." *Raper v. McCrory-McLellan Corp.*, 259 N.C. 199, 130 S.E. 2d 281.

[7]   Also "[t]he inviter will be charged with knowledge of a dangerous condition created by his own negligence or the negligence of his employee acting within the scope of his employment, or of a dangerous condition of which his employee has notice." *Raper v. McCrory-McLellan Corp., supra.*

[8]   Plaintiff was an invitee and therefore it was the duty of the defendant to exercise ordinary care to keep the premises plaintiff was expected to use in a reasonably safe condition, so as not to expose her unnecessarily to danger, and to give warning of hidden conditions and dangers of which he had knowledge, or in the exercise of reasonable supervision and inspection should have had knowledge and of which the plaintiff had less or no knowledge. *Hedrick v. Tigniere,* 267 N.C. 62, 147 S.E. 2d 550; *Brady v. Coach Co.,* 2 N.C. App. 174, 162 S.E. 2d 514; *Britt v. Mallard-Griffin, Inc.,* 1 N.C. App. 252, 161 S.E. 2d 155.

[9]   "What constitutes a reasonably safe condition of premises depends, of course, upon the uses which the proprietor invites his business guests to make of them and those which he should anticipate they will make. (Citation omitted.) It also depends upon the known or reasonably foreseeable characteristics of the invitees." *Hedrick v. Tigniere, supra.*

"The measure of his [defendant-proprietor's] duty in this respect is reasonable or ordinary care, and in determining whether such care has been exercised it is proper to consider the nature of the property, the uses and purposes for which the property in question is primarily intended, and the particular circumstances of the case." *Hedrick v. Tigniere, supra.*

[10]   A proprietor is charged with notice of an unsafe condition, arising from dangerous substances on the floor of the aisles of its store, if the unsafe condition has remained for sufficient time for the proprietor to know, or by the exercise of reasonable care to have known, of its existence. *Long v. Food Stores,* 262 N.C. 57, 136 S.E. 2d 275.

When Mr. Quinn allowed the plaintiff to enter the supermarket to buy groceries, he knew or should have anticipated that in shopping for the groceries she would have to walk along some, if not all, of the aisles in the supermarket.

Whether Mr. Quinn exercised reasonable or ordinary care when he failed to inspect the premises when he was on notice that a fixture

had burned out, and to keep the premises plaintiff was to use in a reasonably safe condition, and whether he warned the plaintiff of any hidden dangers or unsafe conditions of which he had knowledge or of which in the exercise of reasonable supervision and inspection he should have had knowledge, we think are questions properly to be determined by the jury.

Also, in our opinion the evidence does not show contributory negligence as a matter of law on the part of the plaintiff.

Plaintiff's evidence is sufficient to make out a *prima facie* case. The judgment of involuntary nonsuit was improvidently entered.

Reversed.

BRITT and VAUGHN, JJ., concur.