CARL O. STANCIL v. WILSON EARL BLACKMON AND LYNWOOD EARL STANLEY

No. 707SC217

(Filed 24 June 1970)

1. **Automobiles § 44— automobile leaving road without apparent cause — res ipsa loquitur**

   When an automobile leaves the highway for no apparent cause, an inference of driver negligence arises which will take the case to the jury under the doctrine of *res ipsa loquitur*.

2. **Negligence § 35— nonsuit for contributory negligence**

   Nonsuit on the ground of plaintiff's contributory negligence is proper only when the evidence establishes plaintiff's contributory negligence as a matter of law and not when other reasonable inferences may be drawn or when there are material conflicts in the evidence.

3. **Automobiles § 73— error in allowing nonsuit for contributory negligence**

   In this action for injuries sustained when defendants' car left the road in front of plaintiff's car and allegedly caused a cloud of dust which so impaired plaintiff's vision that he could not see to maintain control of his car and ran it into a ditch, questions of whether plaintiff was speeding, whether plaintiff was following too closely and where the cars involved in the accident left the road were for the jury, and the trial court erred in allowing defendants' motions for nonsuit on the ground of contributory negligence.

APPEAL by plaintiff from *Bundy, J.,* 27 October 1969 Session, EDGECOMBE County Superior Court.

This is an action to recover for injuries sustained by plaintiff when his car ran off the road and into a ditch. Plaintiff alleges that his running off the road was caused by defendants' negligence in that the car driven by Blackmon ran off the road in front of him, causing a cloud of dust which so impaired plaintiff's vision that he could not see to maintain control of his car. The evidence in the

case consists of the testimony of plaintiff and one witness. Plaintiff's testimony in substance, except where quoted, tends to show the accident occurred about 2:00 a.m. on a Sunday morning as he and his wife were returning from a drag strip near Benson, North Carolina. Both plaintiff and defendant had taken part in the races. Plaintiff had two beers on the day of the accident, one around 3:00 p.m. after he had gotten off work and the other around 10:30 p.m. at the drag strip. Plaintiff testified that these drinks had no effect on him at all. When plaintiff left the drag strip he drove about one-half mile down the exit road to its intersection with N.C. Highway 242, where he made a right turn towards Benson. When he stopped at the intersection, the car driven by Blackmon was two or three cars in front of him. He was familiar with this particular stretch of road and testified that he was running around 55 or 60 miles per hour, that his speedometer was not connected, and that he was about eight or nine car lengths behind the car being driven by defendant Blackmon. Plaintiff testified that it had been announced at the drag strip that the police were patrolling the roads and that the people in attendance should not exceed the speed limit when leaving. When testifying as to whether there was a sign with a posted speed limit of 35 miles per hour, plaintiff stated "I know the curve is down there but I don't know whether it had 35 on it because the patrolman that come to the hospital told me the speed limit down there was 55 to 60 miles per hour. I did not see the curve sign I don't reckon and I don't know if I have ever seen it because I ain't looked for .it." Plaintiff further stated "There were some cars in front of me and some cars behind me and I got down the road approximately three-quarters of a mile from the stop sign (at the intersection) to the curve and there were some cars in front of me and a car got down there and it looked like it hit the shoulder of the road and skidded. I saw it happen because I was behind the car. It hit the shoulder of the road and when the car skidded around the dust just boiled up — a whole pile of dust and all — and the car skidded back around in the road like it was going to turn clean around and come back and I didn't know whether it was going to hit me or me hit it or what so I locked the brakes. That is, the car skidded around and turned near about around in the road and on the shoulder and I couldn't see for the dust so I put on brakes and pulled my car hard to the right so that his car wouldn't hit me or I wouldn't hit him and his car skidded on down the road and went across the ditch and hit a man's light pole and when mine hit the bank it throwed me under the armrest and messed up my neck and arm and cut my leg." "Just at the first of the curve is where he hit

the shoulder of the road and then is when it skidded around sideways with him. He ran off the road just where the curve started, where the curve bends and all, he hit the shoulder there." "As to whether I am saying his car came to a stop on the highway without giving a signal, his car didn't completely come to a stop because the car was running fast enough where when it hit the shoulder it skidded around in the road and turned sideways and then is when he got it straightened out the other way and then is when it turned and went back down the other side of the road and went across the ditch and hit the light pole. The car didn't stop until it hit that light pole." Plaintiff's only witness testified that he saw plaintiff drinking a beer around 10:00 or 10:30 p.m. but that plaintiff was not under the influence of alcohol nor were his physical or mental faculties impaired. He stated that he "did not see the wreck happen. As I was coming down this same road I was behind them and I saw the two cars go into the curve. When I got to the curve, in the edge of the curve, the dust was everywhere and we just stopped . . ." The witness testified that he was about one-quarter of a mile behind the cars, that he couldn't tell how far apart they were and that he did not think they were speeding. When asked on cross examination to identify a photograph (defendants' exhibit #3) the witness stated that it "fairly and accurately represents the approach to this curve after you leave the crossroads and head toward the accident scene. . . . The sign located at the right side of the road has got a 35 mile limit on it. The sign tells how sharp the curve is, and has an arrow pointing, telling there is a curve, on the yellow sign. There is a small sign below that says 35 miles per hour." "This picture (defendants' exhibit #6) looks like the curve after where the accident happened, it's the same curve, I think, beyond the point of the accident."

At the close of plaintiff's evidence the court granted both defendants' motions for nonsuit. Plaintiff appealed.

*Narron and Holdford by William H. Holdford for plaintiff appellant.*

*Battle, Winslow, Scott and Wiley by Robert Spencer for defendant appellees.*

MORRIS, J.

[1]    The only question to be determined on this appeal is whether the court erred in allowing defendants' motions for nonsuit. The doctrine of *res ipsa loquitur* applies to automobile accidents in some

circumstances. *Greene v. Nichols,* 274 N.C. 18, 161 S.E. 2d 521 (1968). It was there stated that "When a motor vehicle leaves the highway for no apparent cause, it is not for the court to imagine possible explanations. *Prima facie,* it may accept the normal and probable one of driver-negligence and leave it to the jury to determine the true cause after considering all the evidence — that of defendant as well as plaintiff." In view of this case, and in the absence of any explanation or findings in the record as to defendants' negligence, we assume the court granted the motions for nonsuit upon a finding that the plaintiff's own evidence established his contributory negligence as a matter of law.

**[2]** When considering a motion for nonsuit based on plaintiff's contributory negligence, the evidence must be viewed in the light most favorable to the plaintiff, and nonsuit is proper only when the evidence establishes plaintiff's contributory negligence as a matter of law and not when other reasonable inferences may be drawn or when there are material conflicts in the evidence. See 6 N.C. Index 2d, Negligence, § 35, and cases there cited.

**[3]** After reviewing the evidence in the light most favorable to plaintiff, we are of the opinion that such questions as whether plaintiff was speeding, whether plaintiff was following too closely and where the cars involved in the accident actually left the road, as they relate to a determination of whether plaintiff was contributorily negligent, should have been for the jury. We cannot say that contributory negligence on the part of the plaintiff has been so clearly established by his evidence that no other conclusion can reasonably be drawn therefrom.

New trial.

MALLARD, C.J., and GRAHAM, J., concur.