SCREAMING EAGLE AIR, LTD. v. AIRPORT COMMISSION OF FORSYTH COUNTY

No. 8821SC583

(Filed 16 January 1990)

1. **Negligence § 52.1 (NCI3d) — airport accident — owner of leased aircraft — invitee**

    In a negligence action arising from an airplane crash after the airplane struck a dog during takeoff, the trial court did not err by holding that plaintiff was an invitee even though plaintiff did not pay a fee directly to the airport. Plaintiff leased its airplane to Piedmont Aviation, which paid rent to defendant airport commission to operate its business on the airport property. This arrangement was to the benefit of both plaintiff and defendant, even though payment by plaintiff went through a middleman.

    **Am Jur 2d, Aviation §§ 87, 102.**

2. **Negligence § 53.1 (NCI3d) — airport accident — dog on runway — degree of care owed invitee**

    The trial court correctly denied defendant's motion for a directed verdict in an action arising from an airplane crash caused by a dog on the runway. Although defendant contended that plaintiff failed to prove how this specific dog got on the runway on the night in question, the evidence was sufficient for the jury to find that defendant's failure to maintain an adequate fence around the property was a lack of reasonable care in keeping the premises in a reasonably safe condition. Furthermore, the evidence was sufficient for the jury to con-

clude that defendant's lack of prudent conduct resulted in dogs getting on the property and that one of those dogs being on the runway at the time the aircraft was taking off was the proximate cause of the damages to plaintiff's aircraft.

**Am Jur 2d, Aviation §§ 87, 102.**

3. **Negligence § 13 (NCI3d) — airport accident — dog on runway — contributory negligence**

The trial court properly denied defendant's motion for a directed verdict based on contributory negligence in an action arising from an airplane crash caused by a dog on a runway where the evidence of defendant's knowledge of the problems the dogs presented at the airport was overwhelming and evidence of knowledge attributable to plaintiff was insufficient to show that plaintiff's president or employees were on notice of the danger.

**Am Jur 2d, Aviation § 105.**

4. **Evidence § 28 (NCI3d) — airport accident — dogs on runway — FAA daily logs**

The trial court did not err in a negligence action arising from an airplane crash caused by dogs on a runway by admitting daily logs maintained by air traffic controllers at the airport. The evidence was relevant in that the number of dogs or other animals seen on or near the runway in the year preceding the incident in question would have a tendency to prove a dangerous situation existed, and there was nothing unfair about the admission of the logs because there was nothing which would confuse or mislead the jury or tend to suggest a decision on an emotional or other improper basis.

**Am Jur 2d, Aviation §§ 144, 145.**

5. **Evidence § 19.1 (NCI3d) — airport accident — dogs on runway — number of animal sightings in prior years**

The trial court did not err in a negligence action arising from an airplane crash caused by a dog on a runway in 1985 by admitting evidence which showed the number of animal sightings made by airport personnel during the period from 1978 through 1983. Remoteness in time generally goes to the

weight of the evidence and not to its admissibility and this evidence was clearly relevant to the foreseeability issue.

**Am Jur 2d, Aviation §§ 144, 145.**

APPEAL by defendant from judgment of *Judge William H. Freeman* entered 17 December 1987 in FORSYTH County Superior Court. Heard in the Court of Appeals 9 December 1988.

*Allman Spry Humphreys Leggett & Howington, P.A., by William D. Spry, Jr., and David C. Smith, for plaintiff appellee.*

*Roy G. Hall, Jr., for defendant appellant.*

COZORT, Judge.

In this case the owner of an airplane sued the Airport Commission of Forsyth County, claiming that the airport was negligent in not preventing dogs from entering the runway area of the airport. Plaintiff's airplane was damaged when the landing gear collapsed after allegedly striking a dog during an aborted takeoff. The jury awarded plaintiff over $100,000 in damages, the amount necessary to repair the airplane. The primary issue to be considered on appeal is whether the trial court erred in denying defendant's motion for a directed verdict. We find the evidence was sufficient to take the case to the jury, and we find no error in the trial below. The pertinent facts follow.

Screaming Eagle Air, Ltd., hereinafter "Screaming Eagle" or "plaintiff," was the owner of a 1973 Beechcraft King Air C-90. The airplane was leased to Piedmont Aviation, Inc., which kept the airplane at its facility at Smith Reynolds Airport, which was operated by the defendant Airport Commission of Forsyth County. Piedmont Aviation served as the exclusive agent for Screaming Eagle for the purpose of leasing the use of plaintiff's aircraft.

On 6 January 1985, Dr. Thomas Simpson rented plaintiff's aircraft for the purpose of practicing instrument approaches. He began using the plane at approximately 5:50 p.m. Dr. Simpson completed a couple of successful practice landings. At approximately 6:00 p.m., he was preparing to take off for another practice landing. As the aircraft was leaving the ground after going down the runway, Dr. Simpson heard a loud noise. He reduced the engine power to abort the takeoff. The nose gear collapsed and the aircraft skidded on its nose, damaging the plane. A short time after the accident,

Dr. Simpson walked back down the runway to see what he might have struck. He found a large, dead dog on the runway. There was blood around the dog.

Jerry May, an employee of Screaming Eagle, testified that he had been flying airplanes for 23 years and had flown in and out of airports all over the country. He had seen more dogs at Smith Reynolds than any other airport.

Plaintiff also presented evidence of the number of animals seen by airport employees at Smith Reynolds Airport in recent years. That evidence showed that in 1979, 80 animals were sighted; in 1980, 91 animals; in 1981, 70 animals; in 1982, 56 animals; and in 1983, 26 animals. In 1984, 91 animals were sighted on or near the runways at the airport. On several occasions, the arrival or departure of aircraft was delayed because of dogs on the runways. Employees of the Airport Commission were authorized to shoot and kill dogs on airport property. Airport employees estimated that 80 to 100 dogs a year were killed on airport property.

The outer perimeter of the airport covered a distance of approximately five miles. Most of the outer perimeter was enclosed with a chain link fence. For a distance of about 800 feet, there was no fence at all. Along a stretch of about 4,000 feet, the fencing consisted of four or five strands of barbed wire, which would not prevent dogs or other small animals from getting onto the airport property. Dogs had been observed coming through the barbed wire portions of the fence. There were also openings under portions of the chain link fence and culverts under the fencing large enough for dogs to get through.

Defendant's evidence showed that Richard Maxey, president of Screaming Eagle, had on two occasions seen dogs at Smith Reynolds Airport.

The jury returned a verdict finding that Screaming Eagle was damaged by the negligence of defendant Airport Commission. The jury awarded Screaming Eagle $109,000 in damages.

Defendant Airport Commission has argued 15 assignments of error on appeal. The assignments of error can be grouped into three categories: (1) whether the trial court erred in failing to grant defendant's motion for directed verdict either on the basis of insufficiency of evidence of negligence, or on the basis of plaintiff being contributorily negligent as a matter of law; (2) whether the

trial court erred in various evidentiary rulings made during the course of the trial; and (3) whether the trial court erred in the issues submitted and the instructions given to the jury. We first address whether the trial court erred in denying defendant's motion for a directed verdict.

[1] In considering whether plaintiff's evidence was sufficient to survive defendant's motion for directed verdict, the test is whether plaintiff's evidence, viewed in the light most favorable to plaintiff and giving plaintiff every reasonable inference therefrom, is sufficient to support a verdict in plaintiff's favor. *Bullins v. Schmidt*, 322 N.C. 580, 583-84, 369 S.E.2d 601, 603 (1988).

> To establish actionable negligence, plaintiff must show that: (1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury.

*Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988).

We must first examine the status of plaintiff and defendant and the appropriate legal duty owed to plaintiff. At the trial below, the trial court determined that the status of plaintiff, as a matter of law, was that of an invitee, and the trial court instructed the jury accordingly. Defendant objected to the trial court's ruling and argued that the question of whether plaintiff was a licensee or an invitee was a question of fact to be determined by the jury. We find the trial court did not err in holding that plaintiff was, as a matter of law, an invitee.

> "The distinction between a licensee and an invitee does not depend upon whether there is an 'invitation' to come on the premises, but is determined by the nature of the business bringing him to the premises, an invitee being a person who goes upon the premises for the mutual benefit of himself and the person in possession, whose visit is of interest or advantage to the invitor, while a licensee is one who goes upon the premises for his own interest, convenience, or gratification, with the consent of the person in possession . . . ." 6 Strong, N.C. Index 2d, Negligence, § 59; *Pafford v. Construction Co.*, 217 N.C. 730, 9 S.E.2d 408.

*Quinn v. P & Q Supermarket, Inc.,* 6 N.C. App. 696, 699, 171 S.E.2d 70, 72 (1969).

Defendant contends that plaintiff is not an invitee because plaintiff did not pay a rental fee or use fee directly to defendant Airport Commission. We disagree. In *Pasour v. Pierce,* 76 N.C. App. 364, 333 S.E.2d 314 (1985), *disc. rev. denied,* 315 N.C. 589, 341 S.E.2d 28 (1986), this Court held that a person who entered an office building for an interview with a tenant in that building was an invitee of the owner of the building, even though there was no direct monetary benefit to the owner of the building.

We find the logic in *Pasour* controlling in this case. Plaintiff does not have to show the payment of a fee directly to the airport. Plaintiff leased its plane to Piedmont Aviation who paid rent to defendant to operate its business on the airport property. This arrangement was to the benefit of both plaintiff and defendant, even though any payments made by plaintiff went through a middleman, Piedmont Aviation, before reaching defendant. The trial court correctly found plaintiff was an invitee.

[2] The duty of an airport to an invitee has been clearly stated by this Court:

> An aircraft landing field operator owes a duty to persons landing thereon by invitation to maintain the premises in reasonably safe condition for contemplated use, and he must use reasonable care to keep premises in reasonably safe condition so that a person landing his aircraft there will not be unreasonably exposed to any danger. 65 C.J.S., Negligence, § 63 (133), p. 913; *Plewes v. Lancaster,* 171 Pa. Super. 312, 90 A. 2d 279. The rule is identical to the general rule governing the duty owed by the owner or operator of any place of business to an invitee entering the premises. "The owner or proprietor of premises is not an insurer of the safety of his invitees. But he is under a duty to exercise ordinary care to keep that portion of his premises designed for their use in a reasonably safe condition so as not to expose them unnecessarily to danger, (but not that portion reserved for himself and his employees), and to give warning of hidden dangers or unsafe conditions of which he has knowledge, express or implied." 6 Strong, N.C. Index 2d, Negligence, § 53, pp. 108-109, and cases therein cited.

*McElduff v. McCord,* 10 N.C. App. 80, 82, 178 S.E.2d 15, 17 (1970).

Thus, to get by defendant's motion for directed verdict, plaintiff must show that defendant failed to use reasonable care to keep the airport premises in reasonably safe condition so that a person landing his aircraft there would not be unreasonably exposed to any danger. In the first portion of its argument concerning the trial court's denial of the motion for directed verdict, defendant contends that plaintiff's evidence does not show that the dog got on the airport through defendant's negligence. Central to defendant's argument is its contention that plaintiff failed to prove how this specific dog, the one struck by plaintiff's aircraft, got on the runway on the night in question. Defendant's contention is a misapprehension of the law of proximate cause and foreseeability. Our Supreme Court has stated:

> While this Court has repeatedly said that foreseeability of injury is an element of proximate cause, it is clear that it is not necessary that the defendant should have been able to foresee the precise injury which resulted from this conduct. *Williams v. Boulerice,* 268 N.C. 62, 149 S.E.2d 590; *Bondurant v. Mastin,* 252 N.C. 190, 113 S.E.2d 292. "All that the plaintiff is required to prove on the question of foreseeability, in determining proximate cause, is that in 'the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission or that consequences of a generally injurious nature might have been expected.'" *Hart v. Curry, supra; White v. Dickerson, Inc.,* 248 N.C. 723, 105 S.E.2d 51.

*Johnson v. Lamb,* 273 N.C. 701, 710, 161 S.E.2d 131, 139 (1968).

The plaintiff's evidence showed that the fence around the airport was not sufficient to prevent dogs or other animals from getting onto the airport property. Dogs had been frequently observed coming through the fence onto the property. Animal sightings on the airport were frequent, and airport employees estimated that 80 to 100 dogs a year were killed on the airport. We hold the evidence was sufficient for the jury to find that defendant's failure to maintain an adequate fence around the property was a lack of reasonable care in keeping the premises in a reasonably safe condition. Further, the evidence was sufficient for the jury to infer that defendant's lack of prudent conduct resulted in dogs getting on the property and that one of those dogs being on the

runway at the time plaintiff's aircraft was taking off was the proximate cause of the damages to plaintiff's aircraft.

[3]   The second part of defendant's argument on the trial court's denial of defendant's motion for directed verdict is defendant's contention that plaintiff was guilty of contributory negligence as a matter of law. Defendant contends that plaintiff's failure to remove its aircraft from the airport, when it was foreseeable that the aircraft might hit a dog, constituted contributory negligence as a matter of law. We disagree. The rules of contributory negligence are well defined:

> Every person having the capacity to exercise ordinary care for his own safety against injury is required by law to do so, and if he fails to exercise such care, and such failure, concurring and cooperating with the actionable negligence of defendant contributes to the injury complained of, he is guilty of contributory negligence. Ordinary care is such care as an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury. *Chaffin v. Brame*, 233 N.C. 377, 64 S.E.2d 276; *Manheim v. Blue Bird Taxi Corporation*, 214 N.C. 689, 200 S.E. 382; 65 C.J.S., Negligence, § 118, a, b.

> Plaintiff is subject to this universal rule, but his conduct on this occasion "must be judged in the light of the general principle that the law does not require a person to shape his behavior by circumstances of which he is justifiably ignorant, and the resultant particular rule that a plaintiff cannot be guilty of contributory negligence unless he acts or fails to act with knowledge and appreciation, either actual or constructive, of the danger of injury which his conduct involves." *Chaffin v. Brame, supra.*

*Clark v. Roberts*, 263 N.C. 336, 343, 139 S.E.2d 593, 597 (1965).

In determining whether plaintiff is guilty of contributory negligence as a matter of law, the question is whether the evidence establishes plaintiff's negligence so clearly that no other reasonable inference or conclusion may be drawn therefrom. The pivotal question is whether the evidence, when viewed in the light most favorable to Screaming Eagle, permits no other reasonable inference except that plaintiff failed to exercise such care for the safety of its aircraft as a reasonably careful and prudent person would have used un-

der similar circumstances. *Allen v. Pullen*, 82 N.C. App. 61, 65, 345 S.E.2d 469, 472 (1986), *disc. rev. denied*, 318 N.C. 691, 351 S.E.2d 738 (1987).

The evidence, so viewed, tends to show that plaintiff's president had once seen two dogs fifty feet from a runway and, on another occasion, saw a dog in a hangar. He had also heard from others that there had been animals near the runway. A pilot who worked for plaintiff had seen "a number of dogs" at the airport. He had seen "more dogs at Smith Reynolds than at other airports."

We hold that this evidence is insufficient to support a finding that plaintiff was contributorily negligent, and it thus falls far short of the evidence necessary to compel a finding that plaintiff was contributorily negligent as a matter of law. The evidence of defendant's knowledge of the problems the dogs presented at the airport was overwhelming. The number of dog sightings by airport personnel averaged 69 per year for the six years immediately preceding the accident. For the calendar year 1984, 91 animals were sighted by airport personnel near the runway. Airport personnel shot 80 to 100 dogs a year. Airport employees were well aware that a substantial portion, 800 feet, of the outer perimeter had no fence at all, while an additional 4,000 feet had fencing insufficient to keep animals out. Dogs and other animals were frequently observed coming through the open portion of the fence.

The evidence of knowledge attributable to plaintiff, on the other hand, was insufficient to show that plaintiff's president or employees were on notice of the danger presented by the animals present on airport property. Plaintiff's president had seen dogs on airport property on only two occasions; there is no evidence he had ever seen a dog on a runway. Plaintiff's pilot testified that he had seen "a number of dogs," more than at other airports. Plaintiff's pilot testified that he thought the airport was totally enclosed by fencing. There is no evidence to show plaintiff's pilot was aware of the number of animals sighted and the severity of the problem. This evidence is not sufficient to raise an inference of contributory negligence; consequently, it falls short of the evidence necessary to find plaintiff was contributorily negligent as a matter of law. The trial court did not err in denying defendant's motion for a directed verdict.

[4] We now consider defendant's assignments of error dealing with alleged errors on evidentiary questions. Defendant first con-

tends that the trial court erred in admitting evidence from plaintiff of daily logs maintained by air traffic controllers at the airport. Those daily logs revealed that dogs or other animals were seen on or near airport runways on 37 different days during 1984. The logs were compiled and maintained by personnel from the Federal Aviation Administration who were not employees of defendant Airport Commission. Defendant contends that the logs were not relevant to the issue of negligence. Defendant further contends that, even if relevant, the evidence should have been excluded by the trial judge as being unfairly prejudicial to defendant. We find no merit to defendant's argument.

N.C. Gen. Stat. § 8C-1, Rule 401, defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In proving that defendant was negligent, plaintiff had to prove that it was foreseeable that an insecure fence around the airport would expose to danger a person landing an aircraft at the airport. The number of dogs or other animals seen on or near the runway in the year preceding the incident in question would have a tendency to prove that a dangerous situation existed. In fact, it is difficult to imagine how plaintiff could have proved the seriousness of the problem without showing how often animals had been seen on or near the runway.

There is also no merit to defendant's contention that the evidence was unfairly prejudicial, in violation of N.C. Gen. Stat. § 8C-1, Rule 403, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

We do not find the evidence in question to be unfairly prejudicial. "We note at the outset that all evidence favorable to plaintiff will be, by definition, prejudicial to defendants. The test under Rule 403 is whether that prejudice to defendants is unfair." *Matthew v. James*, 88 N.C. App. 32, 39, 362 S.E.2d 594, 599 (1987), *disc. rev. denied*, 322 N.C. 112, 367 S.E.2d 913 (1988). We find nothing unfair about the admission of the logs kept by Federal Aviation Administration personnel. There is nothing in that evi-

dence which would confuse or mislead the jury or tend to suggest a decision on an emotional or other improper basis. This assignment of error is overruled.

[5]   Defendant next contends that it was error to admit plaintiff's evidence which showed the number of animal sightings made by airport personnel during the period 1978 through 1983. Defendant argues that the evidence was too remote in time to be probative of the issues in this case. We disagree. Remoteness in time generally goes to the weight of the evidence and not to its admissibility. *State v. Schultz*, 88 N.C. App. 197, 203, 362 S.E.2d 853, 857, *aff'd*, 322 N.C. 467, 368 S.E.2d 386 (1988). Furthermore, it is clearly relevant to the foreseeability issue for plaintiff to show the frequency of dog and other animal sightings for each and every year from 1978 up to the date of the accident. There is no merit to this assignment of error. We have examined defendant's other assignments of error dealing with evidentiary questions, and we find no prejudicial error was committed.

Finally, we consider defendant's assignments of error relating to the submission of issues to the jury and the trial court's instructions to the jury. We first consider defendant's contention that the trial court erred in not submitting to the jury an issue of whether plaintiff was contributorily negligent. In an earlier part of this opinion, we held the trial court correctly denied defendant's motion for directed verdict on the ground that plaintiff was contributorily negligent as a matter of law. In that discussion, we further held that the evidence cited by defendant was insufficient to raise an inference that plaintiff was contributorily negligent. We thus hold that the trial court did not err in failing to submit to the jury an issue of contributory negligence.

Defendant has also contended that the trial court erred in not submitting a factual issue to the jury on whether plaintiff was an invitee or a licensee, an issue which would impose different duties upon defendant. In an earlier portion of this opinion, we held the trial court did not err in finding that plaintiff was an invitee as a matter of law. There was thus no error in refusing to submit a factual issue to the jury on the status of plaintiff.

We have reviewed defendant's remaining assignments of error relating to the charge to the jury, and we find no prejudicial error.

In summary, in the trial below, we find

No error.

Judges PHILLIPS and GREENE concur.