CHARLENE R. HEADLEY, as Administratrix of the Estate of Larry Stephen Headley, Plaintiff v. JENNIFER LYNN WILLIAMS, Defendant

No. COA03-284

(Filed 20 January 2004)

### 1. Wrongful Death— directed verdict—contributory negligence

The trial court erred in a wrongful death case arising out of a motor vehicle accident by granting a directed verdict in favor of defendant on the ground that decedent was contributorily negligent based upon the changed opinion of a highway trooper, because: (1) all of the evidence presented through testimony about the night of the accident leads to an inference that the collision occurred in decedent's lane of travel; (2) all of the physical

evidence of a collision was located in decedent's lane of travel; (3) a witness testified that prior to the accident, decedent had been maintaining a safe speed and had been operating his motorcycle normally; (4) there was evidence that defendant was driving without contact lenses; (5) the only evidence that decedent may have been contributorily negligent was based upon the trooper's change of opinion in the months following the accident, and it was up to the jury to resolve the conflicts in the evidence; and (6) taking the evidence in the light most favorable to plaintiff shows a reasonable inference can be drawn that defendant, who was possibly not wearing her required corrective lenses, crossed the center line as she rounded a curve and struck the rear of decedent's motorcycle, sending the motorcycle spinning and causing decedent's death.

**2. Evidence— subsequent DWI conviction—credibility**

The trial court did not abuse its discretion in a wrongful death case arising out of a motor vehicle accident by excluding evidence of defendant's subsequent unrelated DWI conviction, because: (1) the trial court concluded that the probative value as to the credibility of defendant from this evidence was substantially outweighed by its prejudicial nature; and (2) a trial court's ruling on a motion in limine is not final, and thus, the trial court can reconsider its preliminary ruling if defendant takes the stand in the new trial.

**3. Trials— decision to bifurcate—abuse of discretion standard**

Although the decision to bifurcate a trial in furtherance of convenience or to avoid prejudice is left to the discretion of the trial court, a single trial of the negligence and damages issues is recommended in this wrongful death case on remand, and if the trial court exercises its discretion to sever the issues, it should enter findings and conclusions which establish that severance is appropriate. N.C.G.S. § 1A-1, Rule 42(b).

Appeal by plaintiff from judgment entered 19 November 2002 by Judge Hal G. Harrison and cross-appeal by defendant from an order entered 16 December 2002 by Judge A. Moses Massey in Watauga County Superior Court. Heard in the Court of Appeals 19 November 2003.

*Horack, Talley, Pharr & Lowndes, P.A., by Neil C. Williams, for plaintiff-appellant.*

*Davis & Hamrick, L.L.P., by Kent L. Hamrick, for defendant-appellant.*

HUNTER, Judge.

Charlene R. Headley ("plaintiff"), as Administratrix of the Estate of Larry Stephen Headley ("Headley"), appeals from a directed verdict entered against her on 19 November 2002. Jennifer Lynn Williams ("defendant") cross-appeals from the denial of her motion to be awarded the costs of the action. Because plaintiff presented sufficient evidence to withstand a directed verdict, we reverse and remand.

On 20 June 2000, plaintiff filed a complaint alleging the wrongful death of Headley, plaintiff's husband, caused by defendant's negligence. Prior to beginning the trial of this case on 4 November 2002, the trial court ordered the trial bifurcated into the issues of liability and damages. The trial court also granted defendant's motion *in limine* and excluded evidence that defendant had been convicted of Driving While Impaired ("DWI") in a matter unrelated to this case.

Plaintiff's evidence presented at trial tends to show that on the evening of 29 November 1999, Headley was riding a motorcycle heading in a southeasterly direction on Castle Ford Road in Watauga County, North Carolina. Defendant was operating a motor vehicle headed in the opposite direction on the same road. At some point as both vehicles negotiated a curve in the road they collided. Headley was thrown from his motorcycle and was later found lying in a ditch on the side of the road. He was taken to Watauga Medical Center where he was pronounced dead as a result of chest and abdominal trauma suffered in the accident. Other than defendant, there were no surviving eyewitnesses to the collision.

Christopher Mason ("Mason") testified that he was driving behind Headley on Castle Fork Road on the night of the accident. He followed Headley through a series of "S" shaped curves, where he would temporarily lose sight of Headley and then regain sight on the other side of the curve. Mason was driving at about 30-35 miles per hour and maintaining a consistent distance between himself and Headley, although he noticed that he was actually gaining ground on Headley. Mason stated that Headley seemed to be driving at a safe speed and

operating his motorcycle normally. Mason followed Headley for approximately a mile and a half. As Mason came out of a curve, he saw what appeared to be a flashing light ahead of him and defendant's vehicle stopped directly in front of him in his lane of travel. Mason, upon seeing scrape marks in the road, later realized the flashing light he saw was Headley's motorcycle spinning down the road. Mason testified that he observed debris from the collision in Headley's lane of travel and scrape marks from the spinning motorcycle. Mason also testified that he had occasion to look inside defendant's vehicle as he was asking the State Trooper if he could leave, and witnessed three or four open and empty beer bottles on the floorboard of the passenger side of the vehicle.

Doug Garland, a trooper with the State Highway Patrol ("Trooper Garland"), testified he was called to the scene of the accident. Trooper Garland observed that the front portion of defendant's car was in Headley's lane of travel with the left front portion near the white fog line. He also observed damage to the left front portion of defendant's vehicle. Headley's motorcycle was located seventy feet further up the road from defendant's vehicle in Headley's lane of travel and was laying on its left side. The motorcycle was damaged at the rear. Field sketches made at the scene by Trooper Garland on the night of the accident indicate that defendant crossed the center line leaving skid marks. These field sketches also indicate that Headley's motorcycle skidded past defendant's car and spun around leaving scratch marks in the road. Trooper Garland noted at least two gouge marks in Headley's lane of travel. He testified that these marks can be indicative of where a collision occurred as they are caused by metal from vehicles being forced downward into the road surface from the force of a collision. On the night of the accident, based on his investigation of the crash scene, Trooper Garland was of the opinion that the accident was caused by defendant crossing the center line and striking Headley's motorcycle.

Trooper Garland also testified that he noticed defendant had a restriction on her driver's license requiring her to wear corrective lenses. As part of his investigation, Trooper Garland asked to see if defendant was wearing contact lenses. Defendant replied that she thought she had cried one out. Defendant did not have a contact lens in either eye. On cross-examination, Trooper Garland stated that his opinion of how the accident occurred changed following the night of the accident and he now believed the accident occurred because Headley had crossed the center line. On redirect examination, how-

ever, Trooper Garland admitted he was unable to pinpoint the point of impact, but instead could only indicate a general area in which the impact likely occurred.

Plaintiff also read into evidence a deposition taken of defendant prior to trial, in which she admitted telling Trooper Garland that she had cried out her contact lenses. Defendant also stated in her deposition that she had those lost contacts replaced just a week or so after the accident by Dr. Jack Lawrence ("Dr. Lawrence") from Watauga Eye Center. Dr. Lawrence testified that he was an optometrist and that defendant had been a patient of his, but that he had not seen her since 1996 when he had ordered her contact lenses, which she never returned to collect. At the close of plaintiff's evidence, the trial court granted a directed verdict for defendant based upon the testimony of Trooper Garland on the ground that the evidence established Headley was contributorily negligent as a matter of law.

The issues are whether the trial court: (I) erred in directing a verdict for defendant on the ground of Headley's contributory negligence; (II) abused its discretion in excluding evidence of defendant's subsequent DWI conviction; and (III) properly bifurcated the trial on the issues of liability and damages. The sole issue on defendant's cross-appeal is (IV) whether the trial court properly denied defendant's motion for costs.

I.

**[1]** Plaintiff first contends the trial court erred in granting a directed verdict for defendant on the ground that plaintiff was contributorily negligent based upon the changed opinion of Trooper Garland. We agree.

"A motion for directed verdict tests the sufficiency of the evidence to take [a] case to the jury." *Abels v. Renfro Corp.*, 335 N.C. 209, 214, 436 S.E.2d 822, 825 (1993). In ruling on a directed verdict motion, a trial court "must examine all of the evidence in a light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences that may be drawn from that evidence." *Id.* at 214-15, 436 S.E.2d at 825. " 'If there is more than a scintilla of evidence supporting each element of the plaintiff's case, the directed verdict motion should be denied.' " *Stamm v. Salomon*, 144 N.C. App. 672, 679, 551 S.E.2d 152, 157 (2001) (quoting *Little v. Matthewson*, 114 N.C. App. 562, 565, 442 S.E.2d 567, 569 (1994)). " 'In deciding the motion, the trial court must treat [plaintiff's] evidence as

true, considering the evidence in the light most favorable to [plaintiff] and resolving all inconsistencies, contradictions and conflicts for [plaintiff], giving [plaintiff] the benefit of all reasonable inferences drawn from the evidence.' " *Cobb v. Reitter*, 105 N.C. App. 218, 221, 412 S.E.2d 110, 111 (1992) (quoting *McFetters v. McFetters*, 98 N.C. App. 187, 191, 390 S.E.2d 348, 350 (1990)).

"A directed verdict for defendant on the ground that plaintiff was contributorily negligent is proper only if the evidence establishes the contributory negligence of the plaintiff as a matter of law." *Id.* at 221, 412 S.E.2d at 112. "In determining whether plaintiff is contributori[ly] negligent as a matter of law, 'the question is whether the evidence establishes plaintiff's negligence so clearly that no other reasonable inference or conclusion may be drawn therefrom.' " *Id.* (quoting *Screaming Eagle Air, Ltd. v. Airport Comm. of Forsyth County*, 97 N.C. App. 30, 37, 387 S.E.2d 197, 201 (1990)). "A directed verdict based on plaintiff's contributory negligence is not proper 'when other reasonable inferences may be drawn or when there are material conflicts in the evidence.' " *Id.* at 222, 412 S.E.2d at 112 (quoting *Stancil v. Blackmon*, 8 N.C. App. 499, 502, 174 S.E.2d 880, 882 (1970)).

At the outset, we note that this case was previously before this Court after the trial court granted summary judgment for defendant. *See Headley v. Williams*, 150 N.C. App. 590, 563 S.E.2d 630 (2002). In reversing the trial court's summary judgment ruling this Court stated:

Based upon our review of the evidentiary materials in the record before us, we conclude there are genuine issues of fact which are material to the questions of whether defendant was negligent and whether such negligence was a proximate cause of the accident. There was evidence that decedent had been operating his motorcycle within the speed limit and entirely within his travel lane for some distance before the collision, and there was no evidence of any condition of the roadway which may have caused him to lose control in the vicinity where the collision occurred. Immediately after the collision, defendant's car was found at rest across the center line of the roadway in decedent's lane of travel; decedent's motorcycle came to rest in its proper travel lane. Decedent was found in a ditch to the right side of his travel lane. There are differing inferences which may be drawn from the various skid and gouge marks found at the scene and from the damage to the motorcycle and to defendant's automobile; although the opinions

of the reconstruction witnesses based upon the physical evidence are admissible as helpful to a jury in understanding such evidence, the weight and credibility to be given to those opinions is for the jury. Finally, there was evidence that defendant was driving in violation of the restriction on her driver's license requiring that she wear corrective lenses.

Considering the evidence in a light most favorable to the plaintiff as the non-moving party, as we are constrained to do, we cannot unequivocally say there is no genuine issue of material fact such that defendant is entitled to judgment as a matter of law. Since the evidence raises genuine issues of fact as to whether decedent's death was proximately caused by negligence on the part of defendant, we hold summary judgment dismissing plaintiff's claim was error.

*Id.* at 593, 563 S.E.2d at 632-33 (citations omitted). Although we recognize that a denial of a summary judgment motion does not bar a subsequent directed verdict, *see Edwards v. Northwestern Bank*, 53 N.C. App. 492, 495, 281 S.E.2d 86, 88 (1981), in this case, the same factual questions remain. All of the evidence presented through testimony about the night of the accident leads to an inference that the collision occurred in Headley's lane of travel. Further, all of the physical evidence of a collision was located in Headley's lane of travel. This included evidence of gouge marks in the road in Headley's lane of travel, which Trooper Garland stated could be indicative of where a collision occurred, and debris from the vehicles. Trooper Garland's sketches of the scene show that defendant skidded into Headley's lane. Defendant's car was stopped in Headley's lane of travel and in fact, Trooper Garland testified that, based on the evidence at the scene, his initial impression was that the accident was caused by defendant. Mason testified that prior to the accident, Headley had been maintaining a safe speed and had been operating his motorcycle normally. There also remains evidence that defendant was driving without contact lenses. Furthermore, the only evidence that Headley may have been contributorily negligent is based upon Trooper Garland's change of opinion in the months following the accident. Although this evidence is admissible as helpful to a jury, it is up to the jury to resolve the conflicts in the evidence.

Thus, taking the evidence in the light most favorable to plaintiff and resolving all conflicts and inconsistencies in plaintiff's favor, the reasonable inference to be drawn from this evidence is that defendant, who was possibly not wearing her required corrective

lenses, crossed the center line as she rounded the curve and struck the rear of Headley's motorcycle sending the motorcycle spinning and causing Headley's death. Accordingly, the trial court erred in directing a verdict for defendant and this case must be remanded for a new trial.

## II.

**[2]** Plaintiff also argues that exclusion of defendant's subsequent unrelated DWI conviction was error. Plaintiff contends this evidence was admissible to impeach defendant's credibility under Rule 609 of the North Carolina Rules of Evidence. *See* N.C. Gen. Stat. § 8C-1, Rule 609 (2003). Although evidence of a DWI conviction is generally admissible under Rule 609, *see State v. Gregory*, 154 N.C. App. 718, 722, 572 S.E.2d 838, 840-41 (2002), a trial court's decision to exclude evidence under Rule 403, because its probative value is substantially outweighed by the danger of unfair prejudice, is reviewed on appeal only for an abuse of discretion, *see State v. Ferguson*, 105 N.C. App. 692, 695, 414 S.E.2d 769, 771 (1992). In this case, the trial court found that the probative value as to the credibility of defendant from the evidence that defendant was convicted of DWI in an unrelated matter subsequent to the accident was substantially outweighed by its prejudicial nature. We conclude the trial court did not abuse its discretion. We note, however, that a trial court's ruling on a motion *in limine* is not final, but rather interlocutory and subject to modification. *Nunnery v. Baucom*, 135 N.C. App. 556, 566, 521 S.E.2d 479, 486 (1999). Thus if defendant, in the new trial, takes the stand, the trial court is permitted to reconsider its preliminary ruling.

## III.

**[3]** Plaintiff also challenges the trial court's decision to bifurcate the trial. The decision to bifurcate a trial in furtherance of convenience or to avoid prejudice is left to the discretion of the trial court. *See In re Will of Hester*, 320 N.C. 738, 741-42, 360 S.E.2d 801, 804 (1987). We, however, conclude that this case is analogous to *Wallace v. Evans*, 60 N.C. App. 145, 298 S.E.2d 193 (1982), in which this Court observed:

> While severance is discretionary, the rule provides for exercise of that discretion only "in furtherance of convenience or to avoid prejudice." G.S. 1A-1, Rule 42(b). The comment to the rule indicates that it was enacted in view of "the multisided law suit made possible by these rules" for the purpose of "guard[ing] against the occasion where a suit of unmanageable size is thrust

on the court." G.S. 1A-1, Rule 42(b) comment. That is not the situation presented here.

*Id.* at 149, 298 S.E.2d at 196. Just as in that case, on remand "a single trial of the negligence and damages issues is recommended. If the [trial] court exercises its discretion to sever the issues, it should enter findings and conclusions which clearly establish that severance is appropriate." *Id.* at 150, 298 S.E.2d at 196.

IV.

On cross-appeal, defendant contends it was error to deny her motion to award her the costs of the action. As we reverse the directed verdict, however, we do not address this issue.

Reversed and remanded.

Judges McGEE and GEER concur.