MAXINE SHELTON and JERRY SHELTON, Plaintiffs v. STEELCASE, INC. and
M.B. HAYNES CORPORATION, Defendants

No. COA08-560

(Filed 16 June 2009)

**1. Workers' Compensation— special employee—exclusivity—motion for directed verdict denied**

There was sufficient evidence to go to the jury on the question of whether plaintiff, who worked for a contract janitorial service and who was injured while working at Steelcase, was a special employee of Steelcase, so that the exclusivity provisions of Workers' Compensation would apply. The trial court properly denied Steelcase's motion for a directed verdict and motion for JNOV.

**2. Workers' Compensation— special employee—instructions**

Instructions on special employment contained correct statements of law, or were not addressed due to the failure to object at trial.

**3. Premises Liability— door leaning against wall—evidence of hazard sufficient**

The trial court properly concluded that Steelcase was not entitled to a directed verdict or a JNOV on a premises liability claim that arose when a heavy fire door stored against a wall fell on plaintiff Maxine Shelton while she was working in Steelcase's facility. The evidence supported a jury finding that the door was a hazardous condition, that Steelcase knew or should have known of its hazardous nature, that Steelcase did not warn Ms. Shelton of the hazard, and that Ms. Shelton was then injured by that hazard.

**4. Negligence— contributory—heavy door leaning unsecured against wall—hiring non-English speaking worker—not required to anticipate another's negligence**

The trial court properly refused to submit the issue of contributory negligence to the jury in a case that arose when a heavy fire door stored against a wall fell on Ms. Shelton as she cleaned Steelcase's facility. Steelcase's argument that Ms. Shelton was contributorily negligent in hiring a worker who did not speak English and who must have tried to move the door after he was told not to was conjecture. Moreover, Ms. Shelton was not re-

quired to anticipate that Steelcase would leave a 300 pound door leaning unsecured against a wall.

**5. Negligence— workplace injury—contractor's injury—workers' compensation recovered—allegations of employer's negligence by third party**

The trial court did not err by not submitting to the jury the issue of negligence by Ms. Shelton's employer in an action that arose when a heavy fire door fell on Ms. Shelton, a Drew employee, as she cleaned Steelcase's facility. Although Steelcase argues that it was entitled to have the issue of Drew's negligence submitted to the jury on its answer alone under N.C.G.S. § 97-10.2(e), that statute did alter the basic civil procedure principle that a defense alleged in an answer may be submitted to the jury only if the defendant forecasts sufficient evidence to allow the jury to find for the defendant on that issue.

**6. Negligence— insulating—joint and several liability**

The trial court erred by granting summary judgment for defendant Haynes in an action that rose from when a heavy door leaning against a wall that had been moved by Haynes employees fell on Ms. Shelton, an employee of Drew, while she cleaned Steelcase's facility. There was an issue of fact as to the distance from the wall to the door; although Haynes argued that the door would not have fallen if it had been secured to the wall by Steelcase, negligence by Steelcase does not necessarily insulate Haynes.

Appeal by plaintiffs from order entered 13 July 2007 by Judge Mark E. Powell and appeal by defendant Steelcase, Inc. from order and judgment entered 29 November 2007 by Judge James U. Downs in Henderson County Superior Court. Heard in the Court of Appeals 19 November 2008.

*Grimes & Teich LLP, by Scott M. Anderson; and Cranfill Sumner & Hartzog LLP, by Jaye E. Bingham and Roy G. Pettigrew, for plaintiffs.*

*Dean & Gibson PLLC, by Rodney Dean and Barbara J. Dean, for defendant Steelcase, Inc.*

*Ball, Barden & Bell, P.A., by Thomas R. Bell, for defendant-appellee M.B. Haynes Corporation.*

GEER, Judge.

Defendant Steelcase, Inc. appeals from the trial court's order and judgment denying its motions for directed verdict and judgment notwithstanding the verdict ("JNOV") and upholding the jury's verdict finding Steelcase liable to plaintiffs Maxine Shelton and her husband Jerry Shelton for negligence and loss of consortium. Plaintiffs have also appealed from the trial court's order granting summary judgment to defendant M.B. Haynes Corporation.

Steelcase primarily argues that plaintiffs were precluded from proceeding with their negligence action because Ms. Shelton, although formally employed by another company, should have been considered a special employee of Steelcase as a matter of law and, therefore, subject to the exclusive remedy of workers' compensation. One of the critical elements for finding a special employee is that the special employer had the right to control the details of the alleged special employee's work. Since Steelcase had by contract expressly provided that Ms. Shelton's employer would be responsible for the supervision and control of Ms. Shelton's work, Steelcase has not demonstrated its entitlement to a directed verdict or JNOV on that issue.

Alternatively, Steelcase argues that its motions for a directed verdict or JNOV should have been granted for lack of evidence of negligence. Steelcase's arguments fail to recognize that this case was tried on a premises liability theory. Since plaintiffs presented evidence that Steelcase maintained a hazardous condition on its premises (an unsecured fire door leaning against a wall), that it knew or should have known that the unsecured door was a hazard, that it nonetheless failed to warn Ms. Shelton of that hazard, and that the hazardous nature of the door was not open and obvious, we hold that the trial court properly denied defendants' motions. Steelcase's remaining arguments are unpersuasive and, therefore, we find no error.

With respect to plaintiffs' appeal, we hold that plaintiffs presented sufficient evidence to raise an issue of fact regarding whether M.B. Haynes workers moved the fire door into a position making it likely that it would tip over and fall—precisely what occurred here—with the result that Ms. Shelton was seriously injured. Because genuine issues of material fact existed, the trial court erred in granting summary judgment to M.B. Haynes. We, therefore, reverse the summary judgment order and remand for  further proceedings.

Facts

At the time of trial, Ms. Shelton was 53 years old and had a GED. Sometime in 2000, she began working for Drew, LLC, a company that contracted with other businesses to provide cleaning and janitorial services. Drew provided services to Steelcase, with Ms. Shelton being the on-site supervisor at Steelcase's Fletcher, North Carolina facility.

In October 2003, Steelcase decided to consolidate some of its space in the 990,000 square-foot Fletcher facility and lease the unused space to generate revenue. Steelcase opted to lease out the maintenance area of the facility and hired M.B. Haynes Corporation to remove some duct work in that area and install a new dock door. In addition, Steelcase requested that Drew, as a special project, clean out the maintenance area so that Steelcase could lease that space to a tenant it had found. Prior to beginning the cleanup project, none of the Drew employees, including Ms. Shelton, had been allowed to enter the maintenance area. Robert Flicker, Steelcase's maintenance manager, told Ms. Shelton that he had marked the items in the maintenance area to be discarded with spray paint and that Drew employees should remove those items that could be picked up by hand.

The scope of the project required Drew to hire another worker. Ms. Shelton hired Alfredo Morales, who primarily spoke Spanish. Another Drew employee, Tomas Vergera, translated for Ms. Shelton. On 29 October 2003, Ms. Shelton, Mr. Vergera, and Mr. Morales did a walk-through of the maintenance area. On that same day, other Steelcase employees were in the area moving materials. M.B. Haynes also had employees working in the maintenance area, cleaning the walls, cutting a hole in the wall with heavy machinery, removing ducting near the pipes and conduits on the wall, and excavating just outside the area for a new dock.

Ms. Shelton gave Mr. Morales instructions, through Mr. Vergera, about what to do. When Mr. Morales pointed to a fire door leaning against the wall with an "X" spray painted on it, Ms. Shelton told Mr. Morales "no," pointed to Mr. Vergera, and indicated that Mr. Vergara would have to remove it with a forklift. The fire door was roughly eight feet long and six feet high and weighed about 300 pounds.

Kenneth Matthews, the Fletcher facility maintenance supervisor, testified that the fire door had been removed from a wall in another section of the facility and moved to the maintenance area for storage.

SHELTON v. STEELCASE, INC.

[197 N.C. App. 404 (2009)]

The door had been in storage for two or three years prior to the accident. James Ogle, an electrician at the Fletcher plant, stated that about three to four months before the accident, the door was secured to conduits on the wall with rope, but at the time of the accident, the rope was gone. The maintenance area had also been cordoned off with curtains and some sort of fence or cage, but the curtain, cage, and rope had all been removed from the area for the cleaning project.

The fire door was propped up against an uneven wall. Coming down from the ceiling, the wall recessed five to six inches and continued to the floor; piping or conduit also ran down the wall to the floor. The fire door was leaning against the conduits along this span, so that the conduits held the door off the wall several inches. One of the conduits had flex or "spring" in it and could be pushed in. Mr. Flicker admitted this "probably wasn't the best place to store the door . . . ."

Ms. Shelton testified that when she first saw the fire door, it looked like it was standing straight up against the wall, as if it were part of the wall. At first glance, she thought that it might be a door to another room because there were other doors like it throughout the plant and she had never been in this part of the facility before.

Near the end of the day, Ms. Shelton returned to the maintenance area to check on Mr. Morales' progress. As most of the trash had been cleared, Ms. Shelton pointed at a broom, indicating that Mr. Morales should sweep the floor. Mr. Morales nodded and turned in the direction of the broom. Ms. Shelton spotted a metal C-clamp on the floor and bent down to pick it up. At that moment, the fire door fell on Ms. Shelton, pinning her to the floor. Mr. Morales heard her cry out and ran to lift the door off of her, but it was too heavy. Mr. Morales shouted for help and two M.B. Haynes employees, Thomas Allen and Jeffrey Burrell, who were working in the area came running. They were able to lift the door off of Ms. Shelton.

Eighteen months after the accident, Mr. Allen and Mr. Burrell told M.B. Haynes' safety director, Charles Lively, that they had moved the fire door the day before it fell on Ms. Shelton. Mr. Allen explained that he and Mr. Burrell were cleaning the wall on which the door was positioned. Mr. Allen was in a lift using an air hose to blow off the wall, and Mr. Burrell was below guiding the hose. Seeing skid marks from the door on the floor, the two men were concerned that they might have moved the door while working with the hose. The men moved the bottom of the door closer to the base of the wall, so that it was

## SHELTON v. STEELCASE, INC.

[197 N.C. App. 404 (2009)]

close to a "straight angle." Mr. Allen stated that they "repositioned it against the wall where it was steadfast, where we felt comfortable with it, and left it there. Left it alone. It was in the same place it was, but we had just rectified it." Mr. Allen believed that it would be safer to place the door flat on the ground but decided not to do so because he and Mr. Burrell were not authorized under M.B. Haynes' safety policy to move the door.

As a result of the door falling on her, Ms. Shelton sustained a crushed pelvis with multiple fractures, a broken sacrum, and nerve damage. She spent two weeks in the hospital and was bedridden for a month afterward. Ms. Shelton continues to have headaches, blurred vision, and intestinal dysfunction. She is no longer physically able to have sex with her husband. She walks with a cane and takes several medications.

On 3 October 2005, Ms. Shelton and her husband filed suit against Steelcase. Subsequently, on 18 August 2006, plaintiffs amended their complaint to add M.B. Haynes as a defendant. Steelcase, M.B. Haynes, and plaintiffs all moved for summary judgment. The trial court denied summary judgment to Steelcase and plaintiffs, but granted summary judgment to M.B. Haynes. Plaintiffs' negligence and loss of consortium claims against Steelcase proceeded to trial, where a jury found Steelcase liable to Ms. Shelton in the amount of $1,250,000.00, although it awarded no damages to Mr. Shelton. Steelcase moved for JNOV, a new trial, and reduction of the verdict based on indemnification. In an order and judgment entered 29 November 2007, the trial court denied Steelcase's motions, entered judgment on the verdict, allowed costs to plaintiffs in the amount of $7,879.11, and awarded prejudgment and postjudgment interest. Steelcase timely appealed to this Court from that order and judgment. Plaintiffs timely appealed from the trial court's order granting M.B. Haynes' motion for summary judgment.

### Steelcase's Appeal

A. *Special Employment Doctrine*

[1] Steelcase argues, as an initial matter, that the trial court should have granted its motions for a directed verdict and JNOV because Ms. Shelton was a special employee of Steelcase. According to Steelcase, because Ms. Shelton was an employee of both Drew and Steelcase, any claim alleging negligence by Steelcase would be barred by the exclusivity provisions of the Workers' Compensation Act. *See* N.C.

Gen. Stat. § 97-10.1 (2007) (providing that if the employee and employer are subject to the Act, the rights and remedies of employee exclude all remedies against employer at common law).

The standard of review of the denial of a motion for a directed verdict and of the denial of a motion for JNOV are identical. *Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 473, 562 S.E.2d 887, 892 (2002). We must determine " 'whether, upon examination of all the evidence in the light most favorable to the non-moving party, and that party being given the benefit of every reasonable inference drawn therefrom and resolving all conflicts of any evidence in favor of the non-movant, the evidence is sufficient to be submitted to the jury.' " *Denson v. Richmond County*, 159 N.C. App. 408, 411, 583 S.E.2d 318, 320 (2003) (quoting *Branch v. High Rock Realty, Inc.*, 151 N.C. App. 244, 250, 565 S.E.2d 248, 252 (2002), *disc. review denied*, 356 N.C. 667, 576 S.E.2d 330 (2003)). A motion for either a directed verdict or JNOV " 'should be denied if there is more than a scintilla of evidence supporting each element of the non-movant's claim.' " *Branch*, 151 N.C. App. at 250, 565 S.E.2d at 252 (quoting *Norman Owen Trucking, Inc. v. Morkoski*, 131 N.C. App. 168, 172, 506 S.E.2d 267, 270 (1998)).

Our courts have recognized that under the "special employment" or "borrowed servant" doctrine, "a person can be an employee of two different employers at the same time." *Brown v. Friday Servs., Inc.*, 119 N.C. App. 753, 759, 460 S.E.2d 356, 360, *disc. review denied*, 342 N.C. 191, 463 S.E.2d 234 (1995). When an employee is employed by one company (the "general" employer), but a party contends the employee was also a special employee of a second company, the courts apply a three-prong test to determine whether the employee is a "special employee" for purposes of the Workers' Compensation Act's exclusivity provisions:

> "When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:
>
> (a) the employee has made a contract of hire, express or implied, with the special employer;
>
> (b) the work being done is essentially that of the special employer; and
>
> (c) the special employer has the right to control the details of the work.

When all three of the above conditions are satisfied in relation to both employers, both employers are liable for worker's compensation."

*Anderson v. Demolition Dynamics, Inc.*, 136 N.C. App. 603, 606, 525 S.E.2d 471, 473 (quoting 3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 67 (1999) [hereinafter Larson's]), *disc. review denied*, 352 N.C. 356, 544 S.E.2d 546 (2000). In making this determination, however, "[c]ontinuance of the 'general' employment is presumed, and the party asserting otherwise must make a 'clear demonstration that a new . . . employer [was] substituted for the old.' " *Id.* at 607, 525 S.E.2d at 473 (quoting *Larson's* § 67.02).

We need not address the second prong because Steelcase has failed to establish that no issue of fact exists as to the first and third prongs—in other words, whether (1) Ms. Shelton made a contract for hire with Steelcase, and (2) whether Steelcase had the right to control the details of Ms. Shelton's work. Viewing the evidence in the light most favorable to Ms. Shelton, the record contains sufficient evidence to submit the special employee issue to the jury.

With respect to the first prong, this Court stated in *Anderson*, the contract requirement is "crucial" because:

the employee loses certain rights along with those gained when striking up a new employment relation. Most important of all, he or she loses the right to sue the special employer at common law for negligence; and . . . the courts have usually been vigilant in insisting upon a showing of a deliberate and informed consent by the employee before employment relation will be held a bar to common-law suit.

*Id.* at 607-08, 525 S.E.2d at 473-74 (quoting *Larson's* § 67.01[2]). Steelcase does not contend that it had an express contract with Ms. Shelton, but rather that she had an implied employment agreement with Steelcase since she was hired by Drew "for the express purpose of working and supervising at Steelcase," she had her own office at Steelcase, and she worked at the Steelcase plant full time.

Evidence of a more compelling nature than that presented by Steelcase was, however, deemed insufficient to justify summary judgment in *Anderson*. The defendant in *Anderson* pointed to evidence that the alleged special employer contacted the decedent directly about working on a project, and the decedent sought permission from the general employer to work on the project, came to the site, and

accepted the assignment. *Id.* at 608, 525 S.E.2d at 474 ("These actions standing alone do not conclusively satisfy the contract for employment prong of the special employer test.").

Here, there is no evidence that Steelcase contacted Ms. Shelton, but rather the evidence is that Steelcase entered into a contract with Drew to provide cleaning services and that Drew elected to provide those services through assignment of Ms. Shelton to the Steelcase facility. Further, evidence was offered that, pursuant to the Drew/Steelcase contract, Drew was required to provide Drew employees to provide the cleaning services and that contract stated that those personnel "will be employees of the Contractor." The record contains extensive evidence from various witnesses, including Steelcase's Human Resources Manager, identifying Ms. Shelton as an employee of Drew and not an employee of Steelcase. In addition, Drew paid Ms. Shelton, withheld her taxes, was responsible for her workers' compensation insurance, and paid her benefits.

While Steelcase points to the fact that Ms. Shelton was working on a special project for Steelcase at the time of the injury, the contract gave Drew employees the power to do projects for Steelcase, as needed, that were outside the standard services provided. Ms. Shelton did not receive any additional compensation for such special projects, although Steelcase was required to pay Drew additional sums.

This evidence is more than the scintilla necessary to send the issue of special employment to the jury. *See id.* at 608-09, 525 S.E.2d at 474 (holding that issue of fact as to existence of implied contract existed based on evidence that decedent was paid and insured through general employer, defendant did not pay payroll taxes for decedent or claim him as employee for insurance purposes, decedent (when alive) identified himself as employee of general employer, and general employer gave decedent his assignments and permission to work on specific jobs).

This Court has stressed that "[t]he third prong, control of *the detail* of the work, may be the most significant." *Id.* at 609, 525 S.E.2d at 474 (emphasis added). *See also Moody v. Kersey*, 270 N.C. 614, 621, 155 S.E.2d 215, 220-21 (1967) (" 'The crucial test in determining whether a servant furnished by one person to another becomes the employee of the person to whom he is loaned is whether he passes under the latter's right of control with regard not only to the work to be done *but also to the manner of performing it.*' " (quoting *Weaver v. Bennett*, 259 N.C. 16, 28, 129 S.E.2d 610, 618 (1963))); *Wolfe v.*

*Wilmington Shipyard, Inc.*, 135 N.C. App. 661, 669, 522 S.E.2d 306, 312 (1999) (upholding directed verdict for plaintiff "[b]ecause the record contains no evidence [the alleged special employer] exercised actual control *over the manner of [the employee's] performance*" (emphasis added)).

On this prong, Steelcase points to evidence that Steelcase's maintenance manager spoke with Ms. Shelton daily about what projects needed to be done and that Ms. Shelton was required to ensure that Steelcase was satisfied with her services. As for the special project of cleaning out the vacated area of the Steelcase plant, Steelcase again points only to evidence that its managers, including Mr. Flicker, explained to Ms. Shelton what they wanted done on the project. Steelcase has pointed to no evidence that it had the right to tell Ms. Shelton specifically how to go about completing the projects, but only that it designated what projects she needed to do. Indeed, Mr. Flicker testified with respect to the fire door that it would have been up to Drew to decide "as to how specifically they" went about disposing of the door.

Even more significantly, the contract between Steelcase and Drew specified in a provision entitled "Supervision": "[Drew] will be solely responsible for the direction and supervision of personnel assigned to the facility, except that maintenance supervisor shall direct the duties of two (2) employees assigned to his/her department." Steelcase's maintenance manager testified that Ms. Shelton was not one of the two employees assigned to his department as specified in the contract and that Ms. Shelton was supervised by Drew.

As our Supreme Court has observed, "[e]mployment, of course, is a matter of contract. Thus, where the parties have made an explicit agreement regarding the right of control, this agreement will be dispositive." *Harris v. Miller*, 335 N.C. 379, 387, 438 S.E.2d 731, 735 (1994). Our Supreme Court reconfirmed this principle in *Rouse v. Pitt County Mem'l Hosp., Inc.*, 343 N.C. 186, 470 S.E.2d 44 (1996), quoting, in addition to *Harris*, 335 N.C. at 387, 438 S.E.2d at 735, *Producers Chem. Co. v. McKay*, 366 S.W.2d 220, 226 (Tex. 1963), in which the Texas Supreme Court held: "When a contract, written or oral, between two employers expressly provides that one or the other shall have right of control, solution of the [borrowed servant] question is relatively simple."

Thus, Steelcase specifically chose to require, by contract, that Drew be "solely responsible for the direction and supervision" of Ms.

Shelton. That contract provides sufficient evidence to warrant submission of the special employee issue to the jury. Steelcase cannot blindly disregard its own contract in order to argue that no issue of fact existed for the jury to decide.[1]

Nonetheless, Steelcase, in support of its argument, urges that *Poe v. Atlas-Soundelier/Am. Trading & Prod. Corp.*, 132 N.C. App. 472, 512 S.E.2d 760, *cert. denied*, 350 N.C. 835, 538 S.E.2d 199 (1999), and *Brown* should control. In *Poe*, the issue presented by this appeal was not before the Court because the plaintiff had agreed that the defendant was a co-employer with the temporary agency that had supplied him to the defendant. 132 N.C. App. at 476, 512 S.E.2d at 763. The plaintiff was arguing that the defendant should have provided workers' compensation insurance for him in addition to that supplied by the temporary agency and that the defendant's failure to do so allowed him to sue the company for negligence. *Id.* Thus, *Poe* does not address the issue in this case.

While *Brown* did address the question whether the plaintiff was a special or borrowed employee, the plaintiff, in that case, worked for a temporary agency—a factual scenario entailing special consideration. *See Brown*, 119 N.C. App. at 760, 460 S.E.2d at 361 (noting that "numerous other jurisdictions have considered whether a temporary employee is an employee of both the temporary agency and the temporary employer"). Nonetheless, *Brown* did not include a contract provision specifying which company had the right to control the details of the employee's work, and the evidence established conclusively that "an implied contract existed between the decedent and [the alleged special employer] since the decedent accepted the assignment from [the temporary agency] and performed the work at the direction and under the supervision of [the alleged special employer]." *Id.* at 759-60, 460 S.E.2d at 360. Further, the evidence specifically indicated that the alleged special employer "controlled the details of decedent's work." *Id.* at 760, 460 S.E.2d at 361.

---

1. Steelcase also argues that it had the right to fire Drew employees for cause, pointing to a provision in the contract stating that "[i]f requested by [Steelcase], [Drew] will remove/replace any person who [Steelcase] believes to be engaged in improper conduct, appears unqualified to perform duties or has violated established procedure regarding security or code of conduct." This provision does not permit Steelcase to deprive any Drew employee of his or her job; it simply allows Steelcase to require Drew to remove the employee from Steelcase's premises. Only Drew could decide whether the employee should be completely let go. In any event, this provision, at best, creates an issue of fact to be decided by the jury.

Here, in contrast to *Brown*, the evidence is not so unequivocal. Steelcase, instead of demonstrating that it was entitled to a directed verdict, has, at best, pointed to evidence giving rise to an issue of fact. *See Anderson*, 136 N.C. App. at 611, 525 S.E.2d at 475 ("In short, defendant at best has shown a genuine issue of material fact as to the third prong of the special employer test, defendant's control over the details of decedent's work."). The trial court, therefore, properly denied Steelcase's motion for a directed verdict and motion for JNOV.

### B. *Jury Instructions on Special Employment*

[2] Steelcase argues alternatively, as to the special employment issue, that the trial court's instructions to the jury regarding the "special employment" doctrine were "misleading, confusing, and contradictory." Steelcase acknowledges that the trial court gave its requested instruction, but challenges the trial court's additional instruction on the issue defining the nature of a contract and stating: "Continuation of the original employment with Drew by Ms. Shelton, that's presumed, and the party asserting otherwise—that is Steelcase—must make a clear demonstration that the new employment or the special employment was satisfied by fulfilling all of these three things I just went over with you."

We first note that Steelcase failed to properly preserve for appellate review any challenge to the instruction regarding the definition of a contract. Rule 10(b)(2) of the Rules of Appellate Procedure states: "A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection[.]" To preserve a challenge to the trial court's jury instructions, "there must be an exception in the record . . . . Otherwise, no question is presented to the appellate court." *Durham v. Quincy Mut. Fire Ins. Co.*, 311 N.C. 361, 367, 317 S.E.2d 372, 377 (1984).

Here, both Steelcase and plaintiffs submitted to the trial court their proposed jury instructions on the special employment doctrine. During the charge conference, trial counsel for both parties discussed with the trial court the list of issues to be submitted the jury:

[THE COURT:] The first issue says, "Was the plaintiff, Maxine Shelton, also an employee of the defendant, Steelcase, Incorporated' " The answer blank.

SHELTON v. STEELCASE, INC.

[197 N.C. App. 404 (2009)]

[DEFENSE COUNSEL]: Your Honor, I think our proposed instructions are—are very similar except I noticed at the end of [plaintiffs'] proposed—

THE COURT: You mean proposed issues?

[DEFENSE COUNSEL]: On the statutory employee proposed instruction that [plaintiffs' counsel] has just handed to you. The very last sentence of that says, "Continuance of the original employment is presumed, and the party asserting otherwise must make a clear demonstration that the new employer was substituted for the old.["] This is not an issue of substitution. . . .

THE COURT: I don't think I was asking for instructions. I was on the issues.

[DEFENSE COUNSEL]: All right. I'm sorry. I apologize, Your Honor. I just—I just noticed that.

When the trial court subsequently asked counsel about any requests for special instructions, Steelcase's counsel did not repeat his argument regarding the special employee instruction.

The instructions ultimately given to the jury included the language contained in plaintiffs' requested instruction regarding the presumption of continuation of the original employment. After the trial court charged the jury, but before the jury was excused to deliberate, the trial court asked if counsel had anything further regarding the instructions, and Steelcase's counsel responded "no." The trial court repeated the question after the jury left, and although plaintiffs' counsel requested an additional instruction regarding expert witnesses, Steelcase's counsel did not make any objection. Finally, the jury requested reinstruction on the special employee issue. After the trial court repeated its instruction, it stated: "I'll note your objection to the Court's supplemental instruction." The court did not identify who had objected or the basis for the objection, and the transcript contains no objection. The court then asked if counsel had anything further, and Steelcase's counsel stated, "[N]o sir."

Since Steelcase never lodged any objection to the instruction regarding the definition of a contract, that issue is not properly before this Court and, therefore, we do not address it. *See Penley v. Penley*, 314 N.C. 1, 27, 332 S.E.2d 51, 66 (1985) ("Defendant, however, failed to object to the instruction on implied contract and therefore Rule 10(b)(2) bars her from assigning error to this portion of the judge's

instruction."). Assuming, without deciding, that the remaining issue—regarding a presumption of continued employment by Drew—was properly preserved for review, the trial court's instruction was a correct statement of the law. *See Anderson*, 136 N.C. App. at 607, 525 S.E.2d at 473 ("Continuance of the 'general' employment is presumed, and the party asserting otherwise must make a 'clear demonstration that a new . . . employer [was] substituted for the old.'" (quoting *Larson's* § 67.02)). Accordingly, we overrule this assignment of error.

C. *Negligence*

[3] Steelcase next contends that the trial court should have granted its motions for a directed verdict and JNOV on the grounds that plaintiffs presented insufficient evidence that Ms. Shelton's injuries were caused by any negligence on the part of Steelcase. Plaintiffs' negligence claim against Steelcase is based on a premises liability theory.

As our Supreme Court noted in *Martishius*, 355 N.C. at 473, 562 S.E.2d at 892 (internal citations omitted), a premises liability case, "[a]ctionable negligence occurs when a defendant owing a duty fails to exercise the degree of care that a reasonable and prudent person would exercise under similar conditions, or where such a defendant of ordinary prudence would have foreseen that the plaintiff's injury was probable under the circumstances." The Court explained further:

> This Court in *Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882 (1998), eliminated the distinction between invitees and licensees and established that the standard of care a landowner owes to persons entering upon his or her land is to "exercise reasonable care in the maintenance of their premises for the protection of lawful visitors." *Id.* at 632, 507 S.E.2d at 892. Adoption of a "true negligence" standard allows the jury to concentrate "upon the pertinent issue of whether the landowner acted as a reasonable person would *under the circumstances*." *Id.* (emphasis added).

*Id.*, 562 S.E.2d at 892-93.

The Supreme Court, in *Cherney v. N.C. Zoological Park*, 362 N.C. 223, 657 S.E.2d 352 (2008) (per curiam), subsequently adopted Judge Wynn's dissent, *Cherney v. N.C. Zoological Park*, 185 N.C. App. 203, 212, 648 S.E.2d 242, 248 (2007), which elaborated on the principles set out in *Nelson*. Judge Wynn's dissent stated:

> In a premises liability case, the duty to exercise reasonable care "requires that the landowner not necessarily expose a lawful

visitor to danger and give warning of hidden hazards of which the landowner has express or implied knowledge." *Bolick v. Bon Worth, Inc.*, 150 N.C. App. 428, 430, 562 S.E.2d 602, 604, *disc. review denied*, 356 N.C. 297, 570 S.E.2d 498 (2002). Thus, where in a negligence action a plaintiff must show that the defendant had a duty to the plaintiff and that the defendant breached that duty, thereby causing the plaintiff's injuries, . . . a plaintiff in a premises liability action must show that the defendant owed her a duty, and that the defendant breached that duty by unnecessarily exposing her to danger and failing to warn her of "hidden hazards of which the landowner has express or implied knowledge[,]" thereby causing her injuries." [*Id.*] at 430, 562 S.E.2d at 604 . . . .

*Id.* at 213, 648 S.E.2d at 248.

In *Cherney*, Judge Wynn's dissent, as adopted by the Supreme Court, found sufficient evidence of negligence when a woman was struck and injured by the falling of a 34-foot ficus tree at the Zoo. The tree had previously been cabled to the planter's wall because of a prior fall, but the cables had snapped. Judge Wynn noted that the cables "illustrate[d] that the Zoo and its employees had 'express or implied knowledge' that the tree might fall . . . ." *Id.* at 215, 648 S.E.2d at 249. Judge Wynn then explained that the issue was not whether the tree was likely to fall, but rather whether the plaintiff, when visiting that building, "was unnecessarily exposed to danger and was not warned of a hidden hazard." *Id.* Judge Wynn concluded that because the Zoo's staff was aware of the danger of the tree falling—as a result of the prior fall and monitoring and cabling of the tree—"the Zoo had a duty to warn [the plaintiff] and other Zoo visitors of the possibility that the tree might fall." *Id.* He observed further that "[t]he Zoo staff could also have moved the tree to a different location, where it would not have injured visitors even if it fell, or could have pruned it back even further to ensure that it was not outgrowing its planter." *Id.*, 648 S.E.2d at 249-50.

Similarly, in *Mazzacco v. Purcell*, 303 N.C. 493, 279 S.E.2d 583 (1981), *overruled in part on other grounds by Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882 (1998), the plaintiff was helping the defendant and other men cut down a tree. While the plaintiff had left the location, the defendant had improperly rigged a rope over another tree that the men intended to pull in order to direct the fall of the tree. The Supreme Court reversed a directed verdict granted for defendant on a premises liability negligence claim because the evidence was

sufficient to allow the jury to find that the defendant "negligently failed to warn plaintiff of the hidden danger in the rigging of the rope." *Id.* at 498, 279 S.E.2d at 587. Although the defendant argued that the condition was obvious and, therefore, there was no duty on the part of the landowner to warn of the condition, the Court determined that there was evidence—based on the plaintiff's testimony— that the hazardous nature of the condition was not equally obvious to the plaintiff. *Id.* at 499, 279 S.E.2d at 587.

This Court addressed a similar situation in *Ryder v. Benfield*, 43 N.C. App. 278, 258 S.E.2d 849 (1979). The *Ryder* plaintiff had agreed with the defendant landowner to pour a concrete cap on top of a cinder block retaining wall. The plaintiff was injured when the wall caved in, pinning the plaintiff underneath it, because the wall had not been braced by the defendant. In upholding the trial court's denial of the defendant's motions for a directed verdict and JNOV, this Court reasoned:

> Viewing the evidence in the instant case in the light most favorable to the plaintiff, it appears that defendant was informed on at least two occasions by at least two different individuals that a retaining wall behind which fill dirt was to be poured should be braced. Reasonable men could draw a logical inference therefrom that the defendant was aware that failure to brace such a wall would create a dangerous or unsafe condition. Moreover, that defendant knew the wall had not been braced could also reasonably be inferred since he owned the premises, conducted his business there, planned the renovations to the basement, and hired all the work done. There is no indication in plaintiff's evidence, and defendant has not come forward with any proof, from which one could conclude that plaintiff was warned of the absence of bracing in the wall. Thus, one justifiable conclusion to make is that plaintiff reasonably "assumed" the wall had been braced, especially in light of the evidence that defendant told plaintiff he would have the wall braced. We believe this evidence presented a question for the jury to decide whether defendant's failure to brace and to warn constituted actionable negligence and, further, whether such negligence, if any, was a proximate cause of the plaintiff's injuries.

*Id.* at 285, 258 S.E.2d at 854.

In this case, Steelcase argues that there was no negligence because plaintiffs presented "no evidence that Steelcase acted unrea-

SHELTON v. STEELCASE, INC.

[197 N.C. App. 404 (2009)]

sonably in the way it had positioned the door." Steelcase has, however, disregarded the premises liability principles set out in the above cases.

Plaintiffs at trial presented evidence that would allow a jury to determine that Steelcase knew that this 300-pound fire door, leaning against a wall lined with conduits, constituted a hazardous condition. Plaintiffs' evidence established that the door was stored in a maintenance area, where non-maintenance workers were not generally allowed to go, and had originally been cordoned off by curtains and a fence or cage. Only three or four months before the accident, the door was also secured to the conduits on the wall with a rope so that it would not fall over if someone hit the door or ran into it. The Steelcase maintenance manager acknowledged in his testimony that there was "no" doubt that it would be safer to tie off the door when leaning it against the wall because it removed the "fall hazard." He even agreed that the testimony of the Steelcase employee that the door had, at one point, been tied off showed that Steelcase knew that the door should have been tied off. The evidence presented at trial further established that the curtains, fence, and rope tying the door to the wall had all been removed as of the date of the accident.

This evidence is more than sufficient to allow a jury to find that Steelcase knew or should have known that the door presented a hazardous condition as it leaned against the wall—and a conduit that could move—without any guarding and without being secured. Although Steelcase argues that the fire door had never fallen before, it was for the jury to weigh that evidence against the evidence that Steelcase had previously secured the door and screened other workers from the door by a fence and curtains. *See Martishius*, 355 N.C. at 475, 562 S.E.2d at 894 (stating, in upholding denial of motions for directed verdict and JNOV on negligence claims, "[e]vidence was presented that defendant was aware that the uninsulated power lines presented a hazard to film crews on the back lot and that workers would have to confront such a hazard to accomplish their assigned duties").

Moreover, plaintiffs also presented evidence that Ms. Shelton was not warned about the hazard presented by the door. Steelcase contends that "[t]he position of the door was open and obvious" and that there "was no hidden danger known only to Steelcase . . . ." As was the case in *Mazzacco*, we cannot say that the hazard presented by the door was equally obvious to Steelcase and Ms. Shelton. The day of the

accident was the first time Ms. Shelton had ever seen the door, and she had previously not been allowed in that portion of Steelcase's facility. Steelcase has cited no evidence establishing as a matter of law that Ms. Shelton should have known that the door was not secured to the wall and was at risk of falling. Steelcase's argument was one for the jury to address.

The evidence of Steelcase's actual or constructive knowledge of the hazardous nature of the door when combined by the failure to warn Ms. Shelton regarding the door is comparable to the evidence found sufficient in *Cherney, Mazzacco,* and *Ryder* to prevail on a premises liability claim. In addition, however, plaintiffs presented further evidence that Steelcase could have eliminated the hazardous condition by, at the time of the accident, laying the door down on the floor or re-securing the door to the wall with a rope and bolts. *See Martishius,* 355 N.C. at 477, 562 S.E.2d at 895 ("Given the evidence presented to the jury concerning the nature and use of the property, the knowledge of defendant through its facility manager of the set conditions, *and the available alternatives,* there was sufficient evidence to submit to the jury the question of whether defendant was negligent in causing plaintiff's injuries." (emphasis added)); *Cherney,* 185 N.C. App. at 215, 648 S.E.2d at 249-50 (relying upon evidence of actions that defendant could have taken to eliminate hazardous condition).

Steelcase argues, however, that this case is indistinguishable from and thus controlled by *Ashe v. Acme Builders, Inc.,* 267 N.C. 384, 148 S.E.2d 244 (1966), in which the Supreme Court was "confronted with th[e] question: Is the plaintiff's evidence, viewed in the light most favorable to her, sufficient to permit a legitimate inference that the defendant was negligent in stacking the sheetrock slabs against the wall at a slight angle and should have reasonably foreseen that some injury to the plaintiff would proximately result from that negligence'" *Id.* at 386, 148 S.E.2d at 246. In holding that the evidence was insufficient to support a finding of negligence, the Court reasoned:

The proper storage place for the materials would appear to be in the room where they were to be used rather than in some other part of the house occupied and in use by the plaintiff. The slabs, if placed lengthwise on the floor, leaning at an angle against the wall, would appear to be less likely to topple over than if they were placed endwise on the floor. To place these slabs flat on

the floor would occupy a space of 12 square feet and would hand-icap those engaged in remodeling the room. Any danger from the falling slabs would have been as apparent to the plaintiff as to the workmen. For three weeks they had been in the same position.

*Id.*

We note first that *Ashe* is not a premises liability case, but rather an action *by the homeowner* against a contractor. In any event, the Supreme Court directed in *Martishius* that, in a premises liability case, "the reasonableness of a defendant's actions depends upon the circumstances of the case, including the nature of the property involved and the intended uses of that property." 355 N.C. at 475, 562 S.E.2d at 893. While the sheetrock in *Ashe* was being stored in the same area where it was being used, it is undisputed that the fire door was not being used or serving any function in the maintenance area at the time of the accident and that Steelcase had kept it in stor-age only because of its scrap value. Although the plaintiff in *Ashe* had presented no evidence of safer alternatives, plaintiffs, in this case, presented evidence that the door could have been laid flat on the floor or secured against the wall, both alternatives eliminating any danger. Finally, unlike the plaintiff in *Ashe* who had been living with the slabs of sheetrock leaning against her kitchen wall for three weeks, Ms. Shelton had never seen the fire door or its placement prior to the day it fell on her. As discussed above, the evidence was suffi-cient to go to the jury on the question whether the hazard presented by the door should have been obvious to Ms. Shelton.

Steelcase next argues that there is no evidence establishing a causal connection between its negligence, if there was any, and Ms. Shelton's injuries because plaintiffs did not present evidence explain-ing how the door fell on Ms. Shelton. This argument, however, again, overlooks the fact that this case was tried on a theory of premises lia-bility. The evidence supported a finding that the door was a haz-ardous condition, that Steelcase knew or should have known of its hazardous nature, and that Steelcase nonetheless did not warn Ms. Shelton of the hazard. She was then injured by that hazard. Steelcase cites no authority that would require plaintiffs to prove the precise mechanism by which the door came to fall.

In any event, plaintiffs did present evidence at trial relating to the question of how the door happened to fall. Thomas Allen, an iron worker for defendant M.B. Haynes, testified that a day or two before the accident, he and his partner were working near the door and

noticed, because of fresh marks in the dust on the floor, that the door appeared to have slid out from the wall. The two men pushed the door back. On the day of the accident, the door, according to Ms. Shelton, was nearly flush with the wall. Based on this evidence, the jury could have found that the door fell because the M.B. Haynes workers pushed it too close to the wall.

With respect to causation, our Supreme Court has explained: "Proximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed." *Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984). To establish that an action is foreseeable, a plaintiff is required to show that " 'in the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected.' " *Id.* at 234, 311 S.E.2d at 565 (quoting *Hart v. Curry*, 238 N.C. 448, 449, 78 S.E.2d 170, 170 (1953)). "It is well settled that the test of foreseeability as an element of proximate cause does not require that defendant should have been able to foresee the injury in the precise form in which it actually occurred." *Id.* at 233-34, 311 S.E.2d at 565.

Here, with respect to causation, Steelcase has argued only that plaintiffs presented no evidence regarding what caused the door to fall. Steelcase does not specifically address whether the failure to warn Ms. Shelton of the hazardous condition maintained on its premises was the proximate cause of her injuries. The evidence is sufficient, however, to permit a jury to find that Steelcase should have been able to foresee that its maintenance of a hazardous condition—the unsecured 300-pound door leaning against a wall—and failing to warn Ms. Shelton and others whom it had requested work in the area of the hazard could result in some injury. Indeed, the risk that the door might fall and injure someone was the very reason that the door had been secured earlier with a rope.

We note that Steelcase does not argue that any insulating negligence would shield Steelcase from liability. *See id.* at 236, 311 S.E.2d at 566 (" 'An efficient intervening cause is a new proximate cause which breaks the connection with the original cause and becomes itself solely responsible for the result in question. It must be

an independent force, entirely superseding the original action and rendering its effect in the causation remote.'" (quoting *Harton v. Forest City Tel. Co.*, 141 N.C. 455, 462, 54 S.E. 299, 301 (1906))). Accordingly, we hold that the trial court properly concluded that Steelcase was not entitled to a directed verdict or JNOV on plaintiffs' negligence claim.

### D. *Contributory Negligence*

**[4]** Steelcase next argues that the trial court erred in not submitting to the jury the issue of contributory negligence. Contributory negligence is "negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant . . . to produce the injury of which the plaintiff complains." *Jackson v. McBride*, 270 N.C. 367, 372,.154 S.E.2d 468, 471 (1967). To establish contributory negligence, the defendant must demonstrate: "(1) a want of due care on the part of the plaintiff; and (2) a proximate connection between the plaintiff's negligence and the injury." *Whisnant v. Herrera*, 166 N.C. App. 719, 722, 603 S.E.2d 847, 850 (2004). If, however, "the evidence raises only a 'mere conjecture' of contributory negligence, the issue should not be submitted to the jury." *Brown v. Wilkins*, 102 N.C. App. 555, 557, 402 S.E.2d 883, 884 (1991).

In answering the "pivotal question" whether the evidence supports a finding of contributory negligence, a plaintiff's conduct " 'must be judged in the light of the general principle that the law does not require a person to shape his behavior by circumstances of which he is justifiably ignorant, and the resultant particular rule that a plaintiff cannot be guilty of contributory negligence unless he acts or fails to act with knowledge and appreciation, either actual or constructive, of the danger of injury which his conduct involves.'" *Screaming Eagle Air, Ltd. v. Airport Comm'n of Forsyth County*, 97 N.C. App. 30, 37, 387 S.E.2d 197, 201 (quoting *Clark v. Roberts*, 263 N.C. 336, 343, 139 S.E.2d 593, 597 (1965)), *disc. review denied*, 326 N.C. 598, 393 S.E.2d 882 (1990).

Steelcase argues that a jury could reasonably find Ms. Shelton contributorily negligent based on evidence that she hired someone who did not understand English to assist with the special cleaning project; that just before the accident Mr. Morales pointed to the door; that Ms. Shelton *told* Mr. Morales that the door would be taken away by forklift; that Mr. Morales said that before the door fell, everyone was speaking in English that he did not understand; and that Ms. Shelton immediately after speaking to Mr. Morales bent over in front

of the door.[2] Steelcase's argument hinges on its claim that "[t]he only plausible explanation is that Morales tried to move the door, causing it to fall."

Steelcase has, however, pointed to no evidence exceeding conjecture that Mr. Morales tried to move the door. Mr. Morales denied touching or attempting to move the door. No witness testified that he or she saw Mr. Morales moving near the door or in a position suggesting an attempt to move the door. Steelcase's sole evidence on this point is a statement taken from Ms. Shelton for workers' compensation purposes shortly after the accident suggesting that just before the accident, Mr. Morales pointed to the door and Ms. Shelton responded in English, which Mr. Morales did not understand, that he was not to move the door. Without any more evidence, we are left with only conjecture that Mr. Morales, after pointing to a 300-pound, six-foot-by-eight-foot steel door, and receiving a response that he could not understand, proceeded on his own initiative to try to move the door—even though the undisputed evidence was that the door would not fit into the dumpsters that Mr. Morales had been using to dispose of the trash. This speculation is not sufficient to send the issue of contributory negligence to the jury. *See Radford v. Norris*, 74 N.C. App. 87, 88, 327 S.E.2d 620, 621 ("Evidence which merely raises a conjecture as to plaintiff's negligence will not support an instruction [on contributory negligence]."), *disc. review denied*, 314 N.C. 117, 332 S.E.2d 483 (1985).

Moreover, Steelcase has pointed to no evidence that Ms. Shelton knew or should have known that the door—which she had seen for the first time on the day it fell on her—was unsecured and presented such a risk that her leaning over in front of it constituted contributory negligence. Our Supreme Court has emphasized that "[a]s a general rule one is not required to anticipate the negligence of others; in the absence of anything which gives or should give notice to the contrary, one is entitled to assume and to act on the assumption that others will exercise ordinary care for their own or others' safety." *Norwood v. Sherwin-Williams Co.*, 303 N.C. 462, 469, 279 S.E.2d 559, 563 (1981), *overruled in part on other grounds by Nelson v. Freeland*, 349 N.C.

2. Plaintiffs presented contrary evidence, but we consider the evidence in the light most favorable to Steelcase in deciding whether the issue of contributory negligence should have been submitted to the jury. *See Enns v. Zayre Corp.*, 116 N.C. App. 687, 692, 449 S.E.2d 478, 481 (1994) ("Applying the rule of contributory negligence to the instant case, it is necessary to interpret all evidence and reasonable inferences therefrom in the light most favorable to defendant."), *aff'd per curiam*, 342 N.C. 406, 464 S.E.2d 298 (1995).

615, 507 S.E.2d 882 (1998). Ms. Shelton was not, therefore, required to anticipate that Steelcase would leave a 300-pound door leaning unsecured against a wall.

Here, the evidence, even when viewed in the light most favorable to Steelcase, indicates that Ms. Shelton was doing precisely what Steelcase had asked her to do: cleaning up the former maintenance area by removing all the trash. Without a showing that Ms. Shelton knew or should have known that the door was unsecured and could fall, the record contains no evidence that she failed to exercise due care for herself when picking up a piece of trash from the floor in front of the door. Yet, "[d]efendant must show that plaintiff disregarded her legal duty to exercise due care for herself." *Enns*, 116 N.C. App. at 692, 449 S.E.2d at 481. We, therefore, hold that the trial court properly refused to submit to the jury the issue of contributory negligence. *See id.* (holding that evidence plaintiff touched one can opener or shelving holding can openers prior to boxed can opener falling on plaintiff's head and injuring her was insufficient evidence of contributory negligence as it did not show "plaintiff disregarded her legal duty to exercise due care for herself . . . [or] unreasonably placed herself in danger"); *Screaming Eagle Air*, 97 N.C. App. at 38, 387 S.E.2d at 202 (holding that defendant failed to present evidence of contributory negligence when, even though plaintiff knew of dogs at airport, record contained no evidence plaintiff was "on notice of the danger presented by the animals present on airport property"). .

E. *Employer Negligence*

[5] In its final argument on appeal, Steelcase contends that the trial court erred in failing to submit to the jury the issue of negligence on the part of Drew, Ms. Shelton's employer. Steelcase argues that the trial court was required to submit the issue to the jury pursuant to N.C. Gen. Stat. § 97-10.2(e) (2007), which states:

If the third party defending such proceeding, by answer duly served on the employer, sufficiently alleges that actionable negligence of the employer joined and concurred with the negligence of the third party in producing the injury or death, then *an issue shall be submitted to the jury* in such case as to whether actionable negligence of employer joined and concurred with the negligence of the third party in producing the injury or death. . . .

(Emphasis added.) According to Steelcase, it was entitled to have the issue submitted to the jury based on its answer and without consid-

eration whether it had forecast sufficient evidence of negligence by Ms. Shelton's employer Drew. We disagree with this construction of the statute.

Our Supreme Court pointed out in *Leonard v. Johns-Manville Sales Corp.*, 309 N.C. 91, 101, 305 S.E.2d 528, 535 (1983), that N.C. Gen. Stat. § 97-10.2(e) codified the Court's prior decision in *Brown v. Southern Ry. Co.*, 204 N.C. 668, 169 S.E. 419 (1933). As the *Leonard* Court explained, the Court in *Brown* had held that when a plaintiff—as in this case—has received workers' compensation from his or her employer and then sues a third party as a result of the accident giving rise to the compensation, the plaintiff's employer cannot be made a party defendant, but "if the defendants proved that [the employer's] negligence contributed to decedent's death, [the employer] could not recover its subrogated interest, and the damages awarded plaintiff employee would be reduced by the amount of the employer's subrogated interest." *Leonard*, 309 N.C. at 101, 305 S.E.2d at 535. The *Leonard* Court stated: "It was this holding [in *Brown*] that was codified in 1959 as N.C.G.S. 97-10.2(e)." *Id.* In short, N.C. Gen. Stat. § 97-10.2(e) exists to permit a defendant to raise as a defense the employer's negligence even though the employer cannot be made a party defendant. *Leonard*, 309 N.C. at 102, 305 S.E.2d at 535.

Subsequently, our Supreme Court explained further that another purpose of N.C. Gen. Stat. § 97-10.2(e) was to ensure that "in a tort action brought by an injured employee against third parties who allege that the employer is jointly and concurrently liable for the employee's injuries, the employer is entitled to a jury trial on the issue of employer negligence under N.C.G.S. § 97-10.2(e)." *Williams v. Int'l Paper Co.*, 324 N.C. 567, 570, 380 S.E.2d 510, 511-12 (1989). Thus, once the defendant—the non-employer—has, in its answer, requested a jury trial on the question of the employer's negligence, the parties (the plaintiff and the defendant) could not extinguish the employer's right to a jury trial by consenting to a hearing by the trial court.

More recently, this Court has explained that N.C. Gen. Stat. § 97-10.2(e) "does not provide for a direct action against the negligent employer nor does it allow for the recovery of direct damages from the employer." *Jackson v. Howell's Motor Freight, Inc.*, 126 N.C. App. 476, 479, 485 S.E.2d 895, 898, *disc. review denied*, 347 N.C. 267, 493 S.E.2d 456, 457 (1997). Instead, the statute "provides a negligent defendant with recourse against an also negligent employer by allowing it to: (1) allege that the employer's negligence concurred in producing plaintiff's injury and, (2) seek a reduction in damages as pro-

vided in the statute." *Id.* When the necessary allegation is contained in the statute, then the employer is entitled to proceed as if it were a party even though it is not named or joined as a party to the proceeding. *Id.* at 479-80, 485 S.E.2d at 898.

As these opinions demonstrate, N.C. Gen. Stat. § 97-10.2(e) sets out a procedural mechanism by which an employer's potential concurrent liability may be determined—including a jury trial right—without the employer being added as a party. We do not, however, read the statute as altering the basic civil procedure principle that a defense alleged in an answer may be submitted to the jury only if the defendant forecasts sufficient evidence to allow the jury to find for the defendant on that issue. We cannot conceive of the General Assembly's intending that a jury could be required to decide an issue simply based on an allegation without presentation of evidence. Indeed, courts applying N.C. Gen. Stat. § 97-10.2(e) have applied the Rules of Civil Procedure regarding sufficiency of allegations and evidence in deciding whether the § 97-10.2(e) issue should be presented to the jury. *See Tise v. Yates Constr. Co.*, 345 N.C. 456, 480 S.E.2d 677 (1997) (upholding pretrial dismissal of defense under N.C. Gen. Stat. § 97-10.2(e) where intervening acts "broke the chain of causation" between employer's negligence and plaintiff's injuries); *see also Geiger v. Guilford Coll. Cmty. Volunteer Firemen's Ass'n*, 668 F. Supp. 492, 497 (M.D.N.C. 1987) (applying summary judgment principles to N.C. Gen. Stat. § 97-10.2(e) issue).

The trial court, in deciding whether to submit the issue of Drew's negligence, thus was correct in focusing on whether Steelcase presented sufficient evidence at trial to allow a reasonable jury to find that Drew had been negligent. In support of its contention, Steelcase recites the allegations in its answer and repeats the argument that it made on contributory negligence: that Mr. Morales must have tried to move the door, causing it to fall on Ms. Shelton. We have, however, already concluded that this contention does not rise above conjecture. The trial court, therefore, properly refused to submit the issue of Drew's negligence to the jury.

## Plaintiff's Appeal

[6] Turning to plaintiffs' appeal, they argue that the trial court erred in granting summary judgment to M.B. Haynes. "[T]he standard of review of the grant of a motion for summary judgment requires a two-part analysis of whether, '(1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law.' " *Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000) (quoting *Gaunt v. Pittaway*, 139 N.C. App. 778, 784, 534 S.E.2d 660, 664, *appeal dismissed and disc. review denied*, 353 N.C. 262, 546 S.E.2d 401 (2000), *cert. denied*, 353 N.C. 371, 547 S.E.2d 810, *cert. denied*, 534 U.S. 950, 151 L. Ed. 2d 261, 122 S. Ct. 345 (2001)), *aff'd per curiam*, 353 N.C. 445, 545 S.E.2d 210 (2001). The evidence presented by the parties is viewed in the light most favorable to the non-moving party. *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003). Moreover, "[s]ummary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist." *Draughon v. Harnett County Bd. of Educ.*, 158 N.C. App. 208, 212, 580 S.E.2d 732, 735 (2003), *aff'd per curiam*, 358 N.C. 131, 591 S.E.2d 521 (2004).

In order to establish a *prima facie* claim for negligence, a plaintiff must show that: "(1) the defendant owed the plaintiff a duty of care; (2) the defendant's conduct breached that duty; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) damages resulted from the injury." *Bostic Packaging, Inc. v. City of Monroe*, 149 N.C. App. 825, 830, 562 S.E.2d 75, 79, *disc. review denied*, 355 N.C. 747, 565 S.E.2d 192 (2002). Plaintiffs argue that "M.B. Haynes had a positive duty to exercise ordinary care to protect Mrs. Shelton from harm" when its employees "entered into an active course of conduct[] by moving the metal door the day before it fell on Mrs. Shelton, knowing that Mrs. Shelton and her assistants were working in the area of the door."

"The law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm, and calls a violation of that duty negligence." *Council v. Dickerson's, Inc.*, 233 N.C. 472, 474, 64 S.E.2d 551, 553 (1951). Thus, "under certain circumstances, one who undertakes to render services to another which he should recognize as necessary for the protection of a third person, or his property, is subject to liability to the third person, for injuries resulting from his failure to exercise reasonable care in such undertaking." *Quail Hollow East Condo. Ass'n v. Donald J. Scholz Co.*, 47 N.C. App. 518, 522, 268 S.E.2d 12, 15, *disc. review denied*, 301 N.C. 527, 273 S.E.2d 454 (1980). "This duty to protect third parties from harm arises under circumstances where the party is in a position so that 'anyone of ordinary sense who thinks will at once recognize that if he does not use

ordinary care and skill in his own conduct with regard to those circumstances, he will cause danger of injury to the person or property of the other.' " *Olympic Prods. Co. v. Roof Sys., Inc.*, 88 N.C. App. 315, 323, 363 S.E.2d 367, 372 (quoting *Davidson & Jones, Inc. v. County of New Hanover*, 41 N.C. App. 661, 666, 255 S.E.2d 580, 584, *disc. review denied*, 298 N.C. 295, 259 S.E.2d 911 (1979)), *disc. review denied*, 321 N.C. 744, 366 S.E.2d 862-63 (1988).

It is undisputed that during the time frame in which Ms. Shelton's accident occurred, M.B. Haynes employees Mr. Allen and Mr. Burrell were in the maintenance area of Steelcase's Fletcher facility cleaning and performing other work pursuant to a contract between M.B. Haynes and Steelcase. Both Mr. Allen and Mr. Burrell stated in their depositions that when they moved the fire door they were aware that other people were working in that area. Although they did not see the door move, they believed they had inadvertently moved it while dragging an air hose along the ground during their cleaning. When they saw skid marks on the floor, they moved the bottom of the door back toward the wall because they were worried that it might "scoot out" from the bottom and hit someone's feet. Despite believing that it would have been safer to lay the door flat on the floor, they did not do so.

When viewed in the light most favorable to plaintiffs, Mr. Allen's and Mr. Burrell's testimony indicates that the two workers were concerned that they had accidentally moved the door while performing their work, that the door might slide out from the bottom, and that there was a risk of injury to other people working in the area. This evidence is sufficient to allow a finding that the M.B. Haynes workers, by repositioning the fire door, assumed a duty to exercise reasonable care to protect third parties that might be injured by their handling of the door. *See Council*, 233 N.C. at 475, 64 S.E.2d at 553 ("When the defendant undertook to perform the promised work under his contract with the State Highway and Public Works Commission, the positive legal duty devolved upon him to exercise ordinary care for the safety of the general public traveling over the road on which he was working.").

M.B. Haynes contends that plaintiffs failed to present evidence of any breach of that duty since, according to M.B. Haynes, the door was moved to a safer distance from the wall. Plaintiffs, however, argue that an issue of fact exists regarding the location of the door once it was moved back.

Plaintiffs presented evidence that Steelcase's maintenance manager learned from the two M.B. Haynes workers, at least two years after the accident, that they moved the door the day before it fell on Ms. Shelton so that they could clean the wall behind it with air hoses.[3] The next day, when Ms. Shelton saw the fire door, it appeared to her to be "straight up, flat" against the wall and looked as if it were "part of the wall." Since the record contains evidence suggesting that no one other than M.B. Haynes employees was working in the area prior to Ms. Shelton's seeing the door, a jury could reasonably find that the location of the door when Ms. Shelton saw it was the location where the M.B. Haynes workers left the door. Mr. Allen and Mr. Burrell, on the other hand, testified that they moved the door from roughly 24 inches away from the wall to a distance more like 11½ to 14-16 inches away from the wall. An issue of fact, therefore, exists as to how far from the wall the M.B. Haynes employees left the fire door.

The actual distance of the door from the wall is a material issue in this case because plaintiffs' mechanical engineering expert, Dr. Bryan Durig, testified that if the door was roughly 14 to 16 inches away from the wall, significant force would be required to cause it to topple over. If, however, the door was moved closer to the wall—as Ms. Shelton observed it—the door would have been "too vertical" and could have tipped over easily with little force applied. The conflicting testimony regarding the distance of the door from the wall and how close Mr. Allen and Mr. Burrell moved the door to the wall creates a genuine issue of material fact as to whether M.B. Haynes breached its duty of care owed to Ms. Shelton.

M.B. Haynes maintains that plaintiffs cannot establish a causal connection between its negligence, if any, and Ms. Shelton's injuries, and thus summary judgment was properly granted in this case. M.B. Haynes is correct that liability does not exist "if all that can be shown is that an actor was negligent" because there must be a showing of proximate cause. *King v. Allred*, 309 N.C. 113, 117, 305 S.E.2d 554, 557 (1983). " '[T]he test of proximate cause is whether the risk of injury, not necessarily in the precise form in which it actually occurs,

---

3. This explanation of how the men came to move the fire door is, of course, inconsistent with the explanation given by the men in their depositions. In addition, when the men were first interviewed by their employer's Corporate Safety Director shortly after the accident, they did not mention having moved the fire door. They did not report moving it until the Corporate Safety Director interviewed them again more than a year later.

is within the reasonable foresight of the defendant.' " *Martishius*, 355 N.C. at 479, 562 S.E.2d at 896 (quoting *Williams v. Carolina Power & Light Co.*, 296 N.C. 400, 403, 250 S.E.2d 255, 258 (1979)).

Here, the injury that occurred was precisely the type of injury expected to result from the risk created by M.B. Haynes' negligence of moving the door too close to the wall. The risk of placing the fire door in a position "too vertical" is that it may tip over and fall, potentially injuring someone or damaging property. Thus, the conflicting testimony regarding the distance of the door from the wall also raises a triable issue of fact regarding proximate causation improper for determination on summary judgment. *See Floyd v. McGill*, 156 N.C. App. 29, 41, 575 S.E.2d 789, 797 (" 'Proximate cause is an inference of fact to be drawn from other facts and circumstances. . . . [W]hat is the proximate cause of an injury is ordinarily a question for the jury.' " (quoting *Hairston*, 310 N.C. at 235, 311 S.E.2d at 566)), *disc. review denied*, 357 N.C. 163, 580 S.E.2d 364 (2003).

M.B. Haynes repeatedly references the fact that plaintiffs have contended that if Steelcase had secured the door to the wall, it would not have fallen. They then assert that even if their workers were negligent, that negligence could not, consequently, be the proximate cause of Ms. Shelton's injury. It is, however, well established that "[t]here may be more than one proximate cause of an injury." *Hairston*, 310 N.C. at 234, 311 S.E.2d at 565. Thus, "[w]hen two or more proximate causes join and concur in producing the result complained of, the author of each cause may be held for the injuries inflicted. The defendants are jointly and severally liable." *Id.*, 311 S.E.2d at 565-66. In sum, Steelcase's negligence does not necessarily insulate M.B. Haynes from liability for its own negligence. Since M.B. Haynes has made no argument and cited no authority suggesting that, under the facts of this case, Steelcase's negligence would somehow preclude M.B. Haynes' liability, M.B. Haynes has failed to show an absence of evidence of proximate cause. The trial court, therefore, erred in granting M.B. Haynes' motion for summary judgment.

## Conclusion

With respect to Steelcase's appeal, we hold that Steelcase has failed to demonstrate any basis for overturning the verdict and final judgment and, therefore, conclude that Steelcase received a trial free of error. As for plaintiffs' appeal, however, we hold that genuine issues of material fact exist and thus the trial court erred

in granting summary judgment in favor of M.B. Haynes. Accordingly, we reverse the order granting summary judgment and remand for further proceedings.

No error in part; reversed and remanded in part.

Judges McGEE and BRYANT concur.